Kandice J. GIURINTANO, Petitioner

v.

DEPARTMENT OF GENERAL SERVICES, Respondent.

Commonwealth Court of Pennsylvania.

Argued March 8, 2011.
Decided April 25, 2011.

James W. Kutz, Harrisburg, for petitioner.

Joshua K. Harman, Harrisburg, for respondent.

Scott F. Cooper and Brian S. Gocial, Philadelphia, for intervenor Language Services Associates.

BEFORE: LEADBETTER, President Judge, and BUTLER, Judge (P), and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Kandice J. Giurintano (Requester) petitions for review of the August 2, 2010, order of the Pennsylvania Office of Open Records (OOR), which granted, in part, Requester's appeal challenging the Department of General Services' (DGS) refusal to disclose certain records relating to a contract between DGS and Language Services Associates (LSA) for telephone translation services (Contract). We affirm.

Requester submitted a request to DGS under the Right–to–Know Law (Law)[1] for records relating to the Contract. Among other things, Requester sought: (1) all independent contractor agreements between LSA and interpreters providing telephone translation services pursuant to the Contract;[2] and (2) the names of all interpreters who have provided services pursuant to the Contract. DGS denied the request based on LSA's position that: (1) the independent contractor agreements are not directly related to the Contract; and (2) the names of the interpreters are exempt from public disclosure under the Law.

Requester appealed to the OOR and requested a hearing. The parties, including LSA, submitted relevant material and provided argument as to the necessity of a hearing. The OOR denied the request for a hearing but granted Requester's appeal in part. Specifically, the OOR concluded that: (1) the independent contractor agreements between LSA and interpreters who have actually performed services pursuant to the Contract are directly related to the Contract and, thus, must be dis-

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. To provide the telephone translation services required under the Contract, LSA retains over 4,000 interpreters through independent contractor agreements.

closed; but (2) names, addresses, signatures and any other information that may identify LSA's interpreters are exempt from disclosure as confidential proprietary information and, thus, may be redacted. The OOR denied Requester's appeal in all other respects. Requester now petitions this court for review.[3]

■ Requester first argues that the OOR erred in failing to require DGS to disclose the independent contractor agreements between LSA and interpreters who have **not** actually performed services pursuant to the Contract. We disagree.

Section 506(d)(1) of the Law provides as follows:

A public record that is not in the possession of an agency but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the agency, and which **directly relates to the governmental function and is not exempt under this act**, shall be considered a public record of the agency for purposes of this act.

65 P.S. § 67.506(d)(1) (emphasis added). In *East Stroudsburg University Foundation v. Office of Open Records*, 995 A.2d 496, 504 (Pa.Cmwlth.2010), *appeal denied,* ── Pa. ──, 20 A.3d 490, 2011 WL 892741 (No. 439 MAL 2010, filed Mar. 16, 2011), this court stated that section 506(d)(1) of the Law restricts access "to records that 'directly' relate to carrying out the governmental function, to avoid access [to records] that may relate to the contract but do not relate to its performance."

Here, pursuant to *East Stroudsburg,* LSA's independent contractor agreements with interpreters who have not actually performed translation services under the Contract are **indirectly** related to the Contract because of the **possibility** that the interpreters might perform services under the Contract. However, those agreements are **not directly** related to the Contract because the interpreters have **not actually performed, and may never perform,** translation services under the Contract. Thus, the OOR properly ruled that DGS was not required to disclose those agreements at this time.[4]

■ Requester next argues that the OOR erred in concluding that information that may identify LSA's interpreters is exempt from disclosure as confidential proprietary information. We disagree.

Under section 708(b)(11) of the Law, a "record that constitutes or reveals a trade secret or confidential proprietary information" is exempt from access by a requester. 65 P.S. § 67.708(b)(11). "Confidential proprietary information" is defined as "[c]ommercial or financial information received by an agency: (1) which is privileged or confidential; and (2) the disclosure of which would cause substantial harm to the competitive position of the

---

3. Although we review this appeal in our appellate jurisdiction, we function as a trial court and subject this matter to independent review. *Jones v. Office of Open Records,* 993 A.2d 339, 340 n. 2 (Pa.Cmwlth.2010). By statute, we are required to enter narrative findings and conclusions, based on the evidence as a whole, and clearly and concisely explain our rationale. *Id.; see* Section 1301(a) of the Law, 65 P.S. § 67.1301(a).

4. We note that Requester relies on *The Morning Call, Inc. v. Lower Saucon Township,* 156 Pa.Cmwlth. 397, 627 A.2d 297, 299 (1993), for the proposition that the agreements must be disclosed because of the possibility that the interpreters might perform services under the Contract. However, in *East Stroudsburg,* 995 A.2d at 503 n. 13, this court stated that cases decided under the previous statute and before the addition of section 506(d)(1) of the Law are no longer applicable.

person that submitted the information." Section 102 of the Law, 65 P.S. § 67.102.

Here, the OOR concluded that identifying information was confidential commercial information that would cause substantial harm to LSA's competitive position if disclosed. In doing so, the OOR considered the affidavit of Laura K.T. Schriver, founder, President and Chief Executive Officer of LSA. Schriver stated:

10. During LSA's performance of the Contract, the full names of the interpreters are not received, retained or otherwise disclosed to DGS or using agencies during Contract performance. Interpreters are identified solely by unique identification numbers assigned by LSA. Even LSA call center employees only identify the interpreters assigned to interpretations through these unique identification numbers. If a specific customer requests the name of the interpreter, the interpreter may, at his/her discretion, reveal [his or her] first name.

11. It is standard industry practice for over-the-phone interpreters to only identify themselves by a unique identification number assigned by the provider. The anonymity provided by using identification numbers is meant to maintain the interpreter's neutrality, confidentiality and prevent outside influences from jeopardizing a[n] unbiased interpretation.

12. LSA had been a contractor to the United States Department of Justice ("DOJ") for telephonic interpreters to interpret for asylum applicants. Under the DOJ contract, an LSA interpreter experienced attempted intimidation by those associated with the Chinese Snakehead Gang in order to sway the interpretation in favor of the asylum applicant. In at least one instance of which LSA is aware, an attorney working with the applicant was responsible for intimidating an LSA interpreter (among other things) and was prosecuted, convicted and sentenced to prison. This led the United States Department of Homeland Security to institute a policy of non-disclosure of the full names of telephonic interpreters during LSA's performance.

13. The success of a business in the interpretation industry is directly tied to the breadth of languages and quality of interpretations that it can provide. The compilation of names of LSA interpreters performing interpretations under the Contract is strictly kept confidential by LSA. LSA has invested substantial resources over many years to identify the highest quality interpreters in the interpretation industry, and offers many languages that other interpretation firms do not provide. LSA currently offers interpretation in 240 languages. LSA employs designated staff whose full-time job is to identify qualified interpreters. LSA takes great care to guard its list of interpreters from release. This information is available only to a limited number of LSA employees, and is not accessible to LSA employees generally. In fact, most employees in LSA's call center only identify the interpreters through the unique identification number[s] provided by LSA rather than the interpreters' full name[s]. The interpreters whom LSA requests [to] perform interpretations for the Commonwealth constitute LSA's most highly qualified interpreters. A list of interpreters performing services for the Commonwealth is not easily or readily obtainable outside of LSA. Divulging the names of LSA's interpreters will cause great business and economic harm to LSA by allowing competitors to gain the fruits of LSA's labor in identifying a vast network of interpreters offering a

quality of interpretation and languages unmatched in the industry.

(Schriver Aff., ¶¶ 10–13, R.R. at 84a–85a) (citation omitted).

Schriver's statements establish that: (1) LSA keeps the identities of its interpreters confidential to protect its investment in those interpreters and to ensure unbiased interpretations; (2) LSA's interpreters are its business assets; and (3) disclosing interpreter identities would cause substantial harm to LSA's competitive position in the interpretation industry. Accepting Schriver's statements as true, we conclude, like the OOR, that information identifying an interpreter falls within the definition of confidential proprietary information.[5]

Requester also argues, in the alternative, that this court should hold a hearing, or remand to the OOR for a hearing, so that Requester can cross-examine Schriver. We reject this argument. Section 1102(a)(2) of the Law states that the decision of an appeals officer "to hold or not to hold a hearing is **not appealable.**" 65 P.S. § 67.1102(a)(2) (emphasis added); *see Jones v. Office of Open Records,* 993 A.2d 339, 343 (Pa.Cmwlth.2010) (rejecting a requester's argument that the appeals officer erred by failing to hold a hearing because section 1102(a)(2) limits a requester's ability to appeal the denial of a hearing).[6]

Accordingly, we affirm.

**5.** We also note that, based on Schriver's affidavit, information identifying an interpreter would fall within the following statutory definition of a "trade secret":

Information, including a formula, drawing, pattern, compilation, including a customer list, program, device, method, technique or process that:

(1) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and

*ORDER*

AND NOW, this 25th day of April, 2011, the order of the Pennsylvania Office of Open Records, dated August 2, 2010, is hereby affirmed.

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

65 P.S. § 67.102.

**6.** Moreover, Requester had the opportunity before the OOR to present conflicting evidence regarding the nature of the interpretation industry, but Requester failed to do so. (*See* Requester's Submission, R.R. at 102a) (stating only that Schriver's self-serving affidavit is insufficient to meet the burden of proving an exemption from public access).