# Illinois Official Reports

## Supreme Court

***Rushton v. Department of Corrections*, 2019 IL 124552**

| | |
|---|---|
| Caption in Supreme Court: | BRUCE RUSHTON *et al.*, Appellees, v. THE DEPARTMENT OF CORRECTIONS *et al.* (Wexford Health Sources, Inc., Appellant). |
| Docket No. | 124552 |
| Filed | December 19, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Sangamon County, the Hon. Brian T. Otwell, Judge, presiding. |
| Judgment | Appellate court judgment affirmed. Circuit court judgment reversed. Remanded. |
| Counsel on Appeal | Andrew Ramage, of Brown, Hay & Stephens, LLP, of Springfield, and Andrew R. DeVooght, Laura K. McNally, Nina Ruvinsky, and Robin V. Waters, of Loeb & Loeb LLP, of Chicago, for appellant. |
| | Donald M. Craven, of Donald M. Craven, P.C., of Springfield, for appellees. |

Justices JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Kilbride, Garman, Karmeier, and Neville concurred in the judgment and opinion.

Justice Theis dissented, with opinion.

Chief Justice Burke took no part in the decision.

## OPINION

¶ 1 Wexford Health Sources, Inc. (Wexford), contracts with the Illinois Department of Corrections (DOC) to provide medical care to inmates. At issue is whether a settlement agreement between Wexford and the estate of an inmate who died from cancer is subject to the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2014)). We hold that it is.

¶ 2                                      BACKGROUND

¶ 3 In August 2015, Bruce Rushton, a journalist for the Illinois Times, sent the following records request to the DOC:

> "All settlement agreements pertaining to claims and/or lawsuits filed in connection with the death of Alfonso Franco, a former inmate at Taylorville Correctional Center who died from cancer in 2012. This request includes but is not limited to settlement agreements involving any private entities charged with providing health care to Mr. Franco, including but not limited to Wexford Health Sources."

The DOC responded that it did not have a copy of the settlement agreement but was attempting to obtain it from Wexford. Wexford declined to turn over the settlement agreement to the DOC, claiming that it was "confidential in nature." In further conversations with the DOC, Wexford argued that the settlement agreement was not a public record for purposes of FOIA.

¶ 4 The DOC's chief legal counsel wrote to Wexford that it was required to provide the document to the DOC so that the DOC's FOIA officer could review it. Wexford continued to maintain that it was not required to give the settlement agreement to the DOC but agreed to provide a redacted version. The DOC responded that the settlement agreement was a public record under section 7(2) of FOIA (*id.* § 7(2)) and renewed its request for an unredacted version. The DOC told Wexford that, if the unredacted version was not forthcoming, it would provide plaintiff with a copy of the redacted version, along with an explanation that it was not able to obtain the unredacted version. Wexford did not provide the unredacted agreement, and the DOC gave Rushton the redacted version.

¶ 5 In April 2017, Rushton and the Illinois Times filed a complaint against the DOC, seeking an unredacted copy of the settlement agreement. The Sangamon County circuit court allowed Wexford to intervene in the lawsuit. The court later ordered Wexford to provide an unredacted version of the agreement to the court under seal.

¶ 6 Wexford moved for summary judgment. In its motion, Wexford argued that the settlement agreement was not subject to FOIA. Wexford cited section 7(2), which provides as follows:

"A public record that is not in the possession of a public body but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the public body, and that directly relates to the governmental function and is not otherwise exempt under this Act, shall be considered a public record of the public body, for purposes of this Act." *Id.*

Wexford argued that the settlement agreement did not "directly relate" to the governmental function that it performs on behalf of the DOC because it simply memorializes its independent business decision to settle a legal claim. Wexford pointed out that the settlement agreement did not mention Franco's medical condition or the medical care that Wexford provided to Franco. Alternatively, Wexford argued that the redacted portions of the agreement were exempt under various provisions of FOIA.

¶ 7    Plaintiffs also moved for summary judgment. In a memorandum attached to their motion, plaintiffs argued that the settlement agreement was a public record under section 7(2). Plaintiffs explained that Wexford is clearly performing a governmental function on behalf of the DOC when it provides medical care to prisoners. Moreover, plaintiffs contended that the settlement agreement directly relates to that governmental function, as it is the settlement of a claim that Wexford failed to perform its governmental function properly. Plaintiffs further argued that none of the exemptions raised in Wexford's motion to dismiss applied to the settlement agreement.

¶ 8    Following a hearing, the trial court denied plaintiffs' summary judgment motion and entered summary judgment for Wexford. The court agreed with Wexford that the settlement agreement is a business decision that is not directly related to its provision of medical services for the DOC. Plaintiffs had argued that the amount of the settlement agreement affected taxpayers because the amount of the settlement would impact any future contracts between Wexford and the DOC. The trial court stated that this was a good policy argument but that it was speculative and any such consequence was only an indirect result of the settlement agreement.

¶ 9    Plaintiffs appealed, and the appellate court reversed. 2019 IL App (4th) 180206. The court first noted that FOIA is to be liberally construed and that its exemptions are to be narrowly construed. *Id.* ¶ 25. The court then explained that this court had held in *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, ¶ 62, that the purpose of section 7(2) is to ensure that governmental entities may not avoid disclosure obligations by delegating their responsibilities to private entities. 2019 IL App (4th) 180206, ¶ 26. The appellate court declined to define the term " 'directly relates.' " *Id.* ¶ 30. The court explained that in *Chicago Tribune v. College of Du Page*, 2017 IL App (2d) 160274, ¶ 48, the Second District had declined to define the term "governmental function" in section 7(2) because it was concerned that any definition " 'might prove to be insufficiently flexible.' " 2019 IL App (4th) 180206, ¶ 27 (quoting *Chicago Tribune*, 2017 IL App (2d) 160724, ¶ 48). For the same reason, the appellate court here declined to define "directly relates." *Id.* ¶ 30. Rather, the court held that a court faced with an issue of whether a document directly relates to a delegated government function should conduct a fact-specific inquiry while considering the term "directly relates" in light of FOIA's liberal construction rule. *Id.* The court then held that the Wexford settlement agreement directly relates to the governmental function that it performs for the DOC because it "involved the settling of a claim arising out of its rendering of medical care." *Id.* ¶ 33.

Accordingly, the court reversed the summary judgment for Wexford and remanded to the trial court to consider the other issue raised in Wexford's summary judgment motion: whether the redacted portions of the settlement agreement were exempt under FOIA. *Id.* ¶ 35.

¶ 10     We allowed Wexford's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018).

¶ 11                                              ANALYSIS

¶ 12     In arguing that the settlement agreement is not subject to disclosure, Wexford relies on two sections of FOIA. First, Wexford contends that the settlement agreement is not a "public record" under section 2.20 of FOIA (5 ILCS 140/2.20 (West 2014)). This section is titled "Settlement and severance agreements" and provides that

> "[a]ll settlement agreements entered into by or on behalf of a public body are public records subject to inspection and copying by the public, provided that information exempt from disclosure under Section 7 of this Act may be redacted." *Id.*

Wexford notes that this section refers to public bodies and does not say anything about settlement agreements of private contractors. [1] Alternatively, Wexford argues that the settlement agreement does not "directly relate" to the government function it performs for the DOC and is thus not subject to disclosure under section 7(2).

¶ 13     This appeal arises from the resolution of cross-motions for summary judgment. See 735 ILCS 5/2-1005 (West 2014). When parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that only a question of law is involved. *Jones v. Municipal Employees' Annuity & Benefit Fund*, 2016 IL 119618, ¶ 26. Resolving this appeal requires us to construe various provisions of FOIA. Accordingly, our review is *de novo*. See *Perry v. Department of Financial & Professional Regulation*, 2018 IL 122349, ¶ 30 ("The standard of review is *de novo*, as this appeal presents an issue of statutory construction and also because it arises from a summary judgment order.").

¶ 14     When interpreting a statute, the court's primary objective is to ascertain and give effect to the intent of the legislature. *Van Dyke v. White*, 2019 IL 121452, ¶ 46. The most reliable indicator of legislative intent is the statutory language, which must be given its plain and ordinary meaning. *Id.* We consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it. *People ex rel. Madigan v. Wildermuth*, 2017 IL 120763, ¶ 17. Words and phrases should not be construed in isolation but must be interpreted in light of other relevant provisions of the statute. *Id.* No part of a statute should be rendered meaningless or superfluous. *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 15.

---

[1]We note that section 2.20 does not merely refer to settlement agreements entered into by public bodies. It also applies to settlement agreements entered into "on behalf of" public bodies. In *State ex rel. Toomey v. City of Truth or Consequences*, 2012-NMCA-104, ¶ 10, 287 P.3d 364, the court construed the phrase "on behalf of" in New Mexico's Inspection of Public Records Act's definition of "public records" to include records of private parties who contract to perform governmental functions. The court noted that " 'on behalf of' " means " 'in the interest of' " or " 'as a representative of.' " *Id.* (quoting Merriam-Webster's Collegiate Dictionary 103 (10th ed. 1996)). Here, plaintiffs have not argued that the settlement agreement was entered into on behalf of the DOC, and thus we do not reach that question.

¶ 15    The public policy behind FOIA is stated in its opening section:

"Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest.

The General Assembly hereby declares that it is the public policy of the State of Illinois that access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government. It is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act." 5 ILCS 140/1 (West 2014).

Under FOIA, "public records are presumed to be open and accessible." *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 407 (1997); see also 5 ILCS 140/1.2 (West 2014) ("All records in the custody or possession of a public body are presumed to be open to inspection or copying."). Based upon the legislature's clear expression of public policy and intent, this court has held that FOIA is to be accorded liberal construction, while its exemptions are to be construed narrowly. *Southern Illinoisian v. Illinois Department of Public Health*, 218 Ill. 2d 390, 416 (2006). Therefore, " 'when a public body receives a proper request for information, it must comply with that request unless one of the narrow statutory exemptions set forth in section 7 of the Act applies.' " *Id.* at 417 (quoting *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 463 (2003)).

¶ 16                                    *Section 2.20*

¶ 17    Wexford first argues that the court need look no further than section 2.20. Wexford points out that this section refers only to settlement agreements entered into by or on behalf of public bodies. Because the statute does not mention settlement agreements entered into by private entities who contract to perform government functions, that ends the inquiry. Wexford argues that this interpretation is supported by section 2.20's simultaneous enactment with section 7(2). According to Wexford, "the simultaneous creation and enactment of Section 7(2) and Section 2.20 readily demonstrates that the legislature was fully aware of the role of private entities in performing governmental functions, but chose, as was its prerogative, to limit disclosure obligations exclusively to public entities' settlement agreements."

¶ 18    We disagree with Wexford that section 2.20 is dispositive, and we do not believe it can be read in isolation from section 7(2). First, we see nothing particularly significant about section 2.20's use of the term "public body." FOIA is a statute governing the disclosure obligations of public bodies. That term is used in almost every section of the statute. Wexford acknowledges that section 2.20 was added to FOIA to clarify that settlement agreements are indeed public records and are not governed by the exemption for insurance-related matters. Thus, the effect of section 2.20 is to clarify that settlement agreements are indeed public records. Section 2(c) is the principal section governing what is a "public record," and this section also uses the term "public body" and says nothing about private parties who contract to perform government

functions. Thus, it cannot be the case that the mere use of the term "public body" excludes parties who contract to perform governmental functions on behalf of a public body.

¶ 19   As this court has made clear, a fundamental principle of statutory construction is that all provisions of an enactment should be viewed as a whole and words and phrases should be read in light of other relevant provisions of the statute. *J.S.A. v. M.H.*, 224 Ill. 2d 182, 197 (2007). Words and phrases must not be construed in isolation. *Id.* Section 7(2) is the section dealing with records held by parties who contract to perform government functions. Section 2(c) and section 2.20 are both concerned with defining what is a public record, while section 7(2) governs which records of government contractors are considered public records of a public body and therefore subject to disclosure.

¶ 20   Wexford contends that the simultaneous enactment of sections 2.20 and section 7(2) shows that the legislature did not intend to make settlement agreements of government contractors subject to disclosure. According to Wexford, this simultaneous enactment shows that the legislature was aware of the role of private contractors who perform government functions but specifically chose to exempt them from section 2.20. But one could more convincingly make the opposite argument. The fact that the legislature knew that it was now clarifying that settlement agreements are public records but did not exempt them in the section dealing with records of government contractors shows that the legislature did intend them to be subject to disclosure when they directly relate to the governmental function. Again, section 7(2) is the exclusive section of FOIA dealing with records held by contractors, and the only requirement it imposes is that the record directly relate to the government function. There is no exemption for settlement agreements or any other type of document typically considered a public record. Moreover, Wexford specifically acknowledges that section 2.20 was intended as a clarification that settlement agreements are public records and are not exempt under the exemption for insurance-related matters. In other words, the legislature intended for settlement agreements to be public records even before section 2.20 was enacted.

¶ 21                                               *Section 7(2)*

¶ 22   This case is governed by section 7(2). The appellate court treated the section 7(2) analysis in almost summary fashion. That court explained that the settlement agreement "*directly relates* to a governmental function because that settlement agreement involved the settling of a claim arising out of [Wexford's] rendering of medical care." (Emphasis in original.) 2019 IL App (4th) 180206, ¶ 33. In a sense, the case really is that simple. Nevertheless, we will try to more fully explain why this is so.

¶ 23   In *Better Government Ass'n*, 2017 IL 121124, ¶¶ 61-62, we explained the meaning and purpose of this section as follows:

> "Section 7(2) was added to the FOIA in 2010 by Public Act 96-542 (eff. Jan. 1, 2010) to extend the definition of what is considered a public record of a public body, where the records are not in the public body's possession. If a public body contracts with a party to perform a governmental function on behalf of the public body, records that are in that party's possession that directly relate to that governmental function and are not otherwise exempt are public records of the public body.
>
> The [Better Government Association (BGA)] asserts that, in adding section 7(2), it was the General Assembly's intent to respond to the growing concern related to the

- 6 -

privatization of government responsibilities and its impact on the right of public information access and transparency. As the BGA points out, when governmental functions are privatized, there is a risk of decreased accountability and transparency. We agree that such an interpretation is consistent with the purpose of the FOIA, which is expressly based on a policy of full, complete disclosure regarding the affairs of government to promote accountability in government and an informed citizenry. 5 ILCS 140/1 (West 2014); *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378-79 (1989). To that end, we agree that section 7(2) ensures that governmental entities must not be permitted to avoid their disclosure obligations by contractually delegating their responsibility to a private entity."[2]

¶ 24    In that case, this court stated that the question raised under section 7(2) was "whether the IHSA has contracted with District 230 to perform a governmental function on its behalf and, if so, whether the requested records are directly related to that governmental function." *Id.* ¶ 63. Recasting that question for this case, the question is whether Wexford has contracted with the DOC to perform a governmental function on its behalf and, if so, whether the requested settlement agreement directly relates to that governmental function. The first element is not in dispute. Illinois has both a constitutional and a statutory duty to provide medical care to inmates. See *People v. Manning*, 227 Ill. 2d 403, 422 (2008) ("The eighth amendment to the United States Constitution requires that inmates receive adequate medical care."); 730 ILCS 5/3-7-2(d) (West 2014) ("All institutions and facilities of the Department shall provide every committed person with a wholesome and nutritional diet at regularly scheduled hours, drinking water, clothing adequate for the season, bedding, soap and towels and medical and dental care"). The DOC has contracted with Wexford to perform this governmental function on its behalf.

¶ 25    Thus, the only question is whether this settlement agreement directly relates to that governmental function, *i.e.*, does the settlement agreement directly relate to the provision of medical care to inmates. Although the settlement agreement is in the record, the complaint in the underlying action that it settled is not. Nevertheless, the parties agree what that complaint alleged. The complaint was filed by the estate of an inmate who died from cancer. In its opening brief, Wexford states: "To be sure, Mr. Franco's underlying complaint pertained to the healthcare he received as an inmate." In their appellees' brief, plaintiffs claim that the 42-count complaint alleged, among other things, wrongful death, negligence, and violations of the eighth amendment. In its reply brief, Wexford states that the matter of the underlying Franco lawsuit is "undisputed." Thus, the question may be stated as whether the settlement of a claim that an inmate died from inadequate medical care directly relates to the provision of medical care to inmates.

¶ 26    In arguing that the settlement agreement does not directly relate to its governmental function, Wexford points to the different language the legislature used in sections 2(c) and 7(2). In section 2(c), which is the section defining what is a public record, the legislature referred to records "pertaining to the transaction of public business." 5 ILCS 140/2(c) (West

_____

[2]Even the defendant school district, which was arguing against disclosure, argued in its brief that, "[i]n applying the 'directly related' test, a reasonable and practical approach is to consider whether the requested records would be subject to FOIA *if the public body had not contracted out the governmental function*." (Emphasis in original.)

2014). By contrast, section 7(2) uses the language "directly relates to the governmental function." *Id.* § 7(2). Wexford contends that the use of "directly relates" instead of "pertains" in section 7(2) shows that the legislature intended this section to require a "heightened nexus" between the record and the governmental function. Wexford contends that Pennsylvania has the same language in its Right-to-Know Law (see 65 Pa. Cons. Stat. § 67.506(d)(1) (2012)) and has imposed a heightened nexus requirement. See, *e.g.*, *Allegheny County Department of Administrative Services v. Parsons*, 61 A.3d 336, 346 (Pa. Commw. Ct. 2013) (construing "directly relates to the governmental function" to mean directly related to *performance* of the governmental function). Wexford further argues that FOIA requires a "document by document" inquiry. Wexford then focuses on the four corners of the document and points out that the settlement agreement does not say anything about the medical care it provided to Franco. Further, Wexford claims that the agreement simply memorializes a business decision to settle a legal dispute between private parties. Wexford argues that "the Confidential Franco Settlement Agreement focuses exclusively on the resolution of legal proceedings, the discharge of legal claims, execution of release documents, and the legal covenants governing all past, present, and future claims."

¶ 27    Plaintiffs, by contrast, argue that the settlement agreement is directly related to the governmental function that Wexford performs for the DOC. The governmental function Wexford performs for the DOC is provision of medical care to inmates, and the document in question is the settlement of a claim that Wexford provided inadequate medical care to an inmate. Plaintiffs focus on the plain meaning of the terms "direct" and "relate" and contend that there is a self-evident connection between Wexford's governmental function (provision of medical care to inmates) and its settlement of malpractice, civil rights, and negligence claims brought against it and its employees as a result of their exercise of this governmental function.

¶ 28    The appellate court did not attempt to define the statutory term "directly relates." The court was concerned that any definition it provided could prove to be "insufficiently flexible in future cases." 2019 IL App (4th) 180206, ¶ 30. The court instead held that whether a document directly relates to a government function must be a fact-specific inquiry guided by liberal construction principles. *Id.* We generally agree with this approach. When statutory terms are undefined, we presume that the legislature intended them to have their ordinary and popularly understood meaning. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 8 (2009). However, looking at the plain meaning of "directly" and "related" is not particularly helpful. "Related" means "having relationship : connected by reason of an established or discoverable relation" (Webster's Third New International Dictionary 1916 (1993)), and "directly" means "in close relational proximity" (*id.* at 641). This court has explained that, if the meaning of an enactment is unclear from the statutory language, the court may consider the purpose behind the law and the evils the law was designed to remedy. *Gruszeczka v. Illinois Workers' Compensation Comm'n*, 2013 IL 114212, ¶ 12. Thus, the meaning of "directly relates" must be considered in light of FOIA's policy, which is relayed in section 1, and also the specific policy and purpose behind section 7(2). This court explained in *Better Government Ass'n* that section 7(2) was the legislature's response to "the privatization of government responsibilities and its impact on the right of public information access and transparency" and that this section "ensures that governmental entities must not be permitted to avoid their disclosure obligations by contractually delegating their responsibility to a private entity." *Better Government Ass'n*, 2017 IL 121124, ¶ 62.

¶ 29    As for Wexford's argument that section 7(2)'s "directly relates" language creates a heightened nexus for records of governmental contractors, the different language the legislature used in sections 2(c) and 7(2) is better understood as simply reflecting the different circumstances of a public body and a private party that contracts to perform a specific governmental function. Section 2(c) broadly applies to a wide variety of materials pertaining to the transaction of public business. This section applies to all such materials "having been prepared by or for, or having been or being used by, received by, in the possession of, or under the control of any public body." 5 ILCS 140/2(c) (West 2014). Moreover, "*[a]ll* records in the custody or possession of a public body are presumed to be open to inspection or copying." (Emphasis added.) *Id.* § 1.2. By contrast, a private party that contracts to perform a specific governmental function does *not* subject all its records to FOIA. See *Chicago Tribune*, 2017 IL App (2d) 160274, ¶ 53 (explaining that section 7(2)'s "directly relates" requirement "makes clear the legislature's intention that the general public may not access all of a third party's records merely because it has contracted with a public body to perform a governmental function"). Rather, the only records subject to FOIA are those that "directly relate" to the governmental function. See *Better Government Ass'n*, 2017 IL 121124, ¶ 61 ("If a public body contracts with a party to perform a governmental function on behalf of the public body, records that are in that party's possession that directly relate to that governmental function and are not otherwise exempt are public records of the public body."). This helps to ensure that parties are only able to access records of private contractors that are truly related to its exercise of a governmental function and not those records that are only incidentally or tangentially related to the contract with the government.

¶ 30    As far as Wexford's argument that Pennsylvania has imposed a heightened nexus by requiring that the requested record directly relate to *performance* of the governmental function, this is little more than an application of the plain language of the statute. The relevant Pennsylvania language mirrors section 7(2) in that it refers to parties who have contracted to "perform a governmental function" and states that records that directly relate to the governmental function are considered public records. 65 Pa. Cons. Stat. § 67.506(d)(1) (2012); see 5 ILCS 140/7(2) (West 2014). In *East Stroudsburg University Foundation v. Office of Open Records*, 995 A.2d 496, 504 (Pa. Commw. Ct. 2010), the court explained the meaning of this statutory language as follows:

    "The General Assembly also used the term 'governmental function' to limit access to only those records in a contractor's possession that relate to that function, not other records that a contractor maintains during the normal scope of business. Access is further restricted to records that 'directly' relate to carrying out the governmental function, to avoid access [to records] that may relate to the contract but do not relate to its performance. For example, material used in preparation for the bid for the governmental contract would not be subject to access because those records do not directly relate to carrying out the governmental function."

¶ 31    *East Stroudsburg University Foundation*'s analysis shows that the Pennsylvania standard is no different from the one this court imposed in *Better Government Ass'n* that public bodies must not be able to avoid disclosure responsibilities by delegating their governmental function to a third party. After giving the above description of how section 506(d)(1) of Pennsylvania's Right-to-Know Law works, the *East Stroudsburg University Foundation* court explained that its interpretation was confirmed by the Iowa Supreme Court's decision in *Gannon v. Board of*

*Regents*, 692 N.W.2d 31 (Iowa 2005). *East Stroudsburg University Foundation*, 995 A.2d 496 at 505. In that case, an Iowa taxpayer wanted to access certain records of the Iowa State University Foundation, which had contracted to perform certain governmental tasks on behalf of Iowa State University. *Gannon*, 692 N.W.2d at 33. The Iowa Supreme Court held that these records were subject to disclosure, applying a provision of the Iowa Code that stated that " '[a] government body shall not prevent the examination or copying of a public record by contracting with a nongovernment body to perform any of its duties or functions.' " *Id.* at 39 (quoting Iowa Code § 22.2(2) (2001)). The *East Stroudsburg University Foundation* court explained that both its statute's "directly relates" requirement and Iowa's provision that public bodies may not avoid disclosure responsibilities by contracting with third parties to provide governmental functions serve the same function: "providing access to records from contractors that relate to carrying out normal government business." Here, the governmental function that Wexford contracted to perform for the DOC—its normal government business—was the provision of medical care to inmates. The settlement agreement directly relates to performance of that governmental function. It is the settlement of a claim that Wexford's inadequate medical care—its alleged *inadequate performance of its governmental function*—led to the death of an inmate. The connection is neither indirect nor tangential. It is direct and obvious.

¶ 32 Wexford's position would allow precisely what section 7(2) forbids. Again, this court explained in *Better Government Ass'n* that section 7(2) prevents public bodies from avoiding their disclosure obligations by contractually delegating their responsibilities to private entities. Here, Wexford stood in the shoes of the DOC when it provided medical care to Franco. Wexford conceded at oral argument that, if this settlement agreement were between Franco's estate and the DOC directly, it would be subject to disclosure. Thus, according to Wexford, when inmates die in the custody of the DOC and their estates sue the DOC for the negligent provision of medical care, the public has a right to access documents settling those claims if the medical care was provided by the DOC. If the DOC contracts with a private party to perform this governmental function, however, then those documents may be shielded from public view. In other words, Wexford's position is that the DOC can avoid this disclosure responsibility by delegating its governmental function to a private entity—precisely the situation section 7(2) was intended to prevent.

¶ 33 We are also not persuaded by Wexford's "four corners of the document" argument. Wexford conceded at oral argument that, even if the document did explain that it was the settlement of a claim that an inmate died because of inadequate medical care, Wexford would still contend that the document was not subject to disclosure. Moreover, Wexford describes the settlement agreement in a way that obfuscates the direct relationship between the document and the governmental function. For instance, Wexford argues that the settlement agreement is between private parties and simply memorializes its independent business decision to settle a legal claim. The direct relationship becomes apparent, however, when the relevant information is added back in. In other words, if we say that "the settlement agreement was between the estate of an inmate and an entity that contracted to provide medical care to that inmate on behalf of the DOC" or "the document memorializes a business decision to settle a claim that, in discharging its governmental function to provide medical care to inmates, Wexford negligently caused the death of an inmate," the direct relationship between document and governmental function is easy to see. We cannot allow a private party to defeat its disclosure

obligation simply by describing the document in a way that obscures the direct relationship to its governmental function.

¶ 34        Moreover, saying that FOIA requires a document-by-document inquiry does not mean that a court simply focuses on the four corners of the document and fails to consider it in context. Wexford argues that we should be guided by Pennsylvania's construction of its analogous statute (section 506(d)(1) of Pennsylvania's Right-to-Know Law (65 Pa. Cons. Stat. § 67.506(d)(1) (2012))). A case applying that section, *Giurintano v. Department of General Services*, 20 A.3d 613 (Pa. Commw. Ct. 2011), shows precisely why a document needs to be considered in context in order to see whether a direct relationship to the governmental function exists. In that case, the requester sought records relating to a contract between the Pennsylvania Department of General Services (DGS) and Language Services Associates (LSA). DGS contracted with LSA to perform telephone translation services. Specifically, the requester wanted to see the independent contractor agreements between LSA and interpreters who provide telephone services pursuant to the contract. *Id.* at 614. The Office of Open Records (OOR) ruled that only the agreements between LSA and those interpreters who had performed under the contract were subject to disclosure. *Id.* On appeal, the requester argued that the OOR should have also granted the request with respect to interpreters who had *not* performed under the contract. Applying section 506(d)(1), the court upheld the decision of the OOR. The court explained that agreements between LSA and interpreters who had not actually performed services pursuant to the contract were not directly related to the contract but rather were only indirectly related because of the possibility that those interpreters might perform under the contract. *Id.* at 615. Thus, it was impossible to determine whether these documents directly related to the governmental function simply by looking at what was provided within their four corners. All the requested documents were contracts between LSA and interpreters. Only by looking at which interpreters had performed services pursuant to LSA's contract with DGS could the court determine whether the agreements "directly related" to the governmental function. Similarly, here, the only way to know whether this settlement agreement directly relates to Wexford's governmental function is to know the nature of the claims and whether they were brought by a DOC inmate treated by Wexford.

¶ 35        We note that the Court of Appeals of New Mexico recently was faced with the same issue and, not surprisingly, reached the same conclusion as our appellate court did and that we reach today. While the relevant statutory language differs from ours, the court was guided by the same principles that we are, and the analysis mirrors ours in several respects. In *New Mexico Foundation for Open Government v. Corizon Health*, No. A-1-CA-35951, 2019 WL 4551658 (Sept. 13, 2019), the New Mexico Corrections Department (NMCD) had contracted with Corizon Health to provide health care services in certain New Mexico detention centers. As a result of the medical care Corizon provided, several inmates filed civil suits against Corizon, alleging improper care and/or sexual assault. Corizon settled at least 59 of the claims. *Id.* at *1. The petitioners filed requests for copies of the settlement agreements under New Mexico's Inspection of Public Records Act (IPRA) (N.M. Stat. Ann. § 14-2-1 *et seq.* (2019)). *New Mexico Foundation for Open Government*, 2019 WL 4551658, *1. The initial request was made to NMCD, who responded to the request with an explanation that Corizon provides medical care to the inmates and that Corizon " 'pays all settlement amounts, pays its own attorneys to settle or try the case, and pays the inmate's attorney fees and any judgments or verdicts entered in these cases.' " *Id.* NMCD explained that Corizon is the custodian of

- 11 -

settlement agreements involving medical care of inmates and provided petitioners with Corizon's contact information. *Id.* Petitioners then requested the settlement agreements from Corizon, who responded that " 'IPRA does not compel production of this information. Further, the confidentiality agreements executed by the parties prohibit[ ] disclosure of the requested information.' " *Id.*

¶ 36    Petitioners filed for a writ of *mandamus* requiring disclosure of the settlement agreements. *Id.* at *2. In response, Corizon made the same argument that Wexford makes here. Corizon argued that the settlement agreements "(1) are private contracts between Respondent and private persons which require confidentiality pursuant to clauses in the agreements; and (2) are not a component of the public function Respondent contracted to perform for the State." *Id.* The trial court rejected this argument and granted the writ of *mandamus*. The court explained that Corizon was performing a public function and acting on behalf of NMCD in providing medical care to inmates, that the settlement agreements related to Corizon's performance of this public function, and that Corizon could not, through the use of confidentiality clauses, contract away the public's right to IPRA disclosure. *Id.*

¶ 37    Corizon appealed, and the New Mexico Court of Appeals affirmed. New Mexico's statute differs from ours in that it does not have a section specifically dealing with records held by government contractors. Rather, the courts have found such records to be covered under the general definition of "public records," which includes records that are held " 'on behalf of any public body and relate to public business.' " *Id.* at *4-5 (quoting N.M. Stat. Ann. § 14-2-1(A) (2019)); see N.M. Stat. Ann. § 14-2-6(G) (2013). New Mexico had previously held that the "on behalf of" language included records held by private contractors who perform governmental functions. See *Toomey v. City of Truth or Consequences*, 2012-NMCA-104, ¶ 20, 287 P.3d at 369.

¶ 38    In finding that the settlement agreements were subject to disclosure, the court relied on three factors. First, the court relied on the plain language of IPRA. The court explained that the settlement agreements clearly related to a public business—the medical care and safety of NMCD inmates. *New Mexico Foundation for Open Government*, 2019 WL 4551658, at *5. The court reiterated that Corizon was acting on behalf of NMCD when it provided medical services to inmates and then stated that "[t]he settlement agreements were created as a result of Respondent's public function acting on behalf of NMCD as they involve alleged mistreatment of inmates while in the custody of the State of New Mexico." *Id.* Second, the court relied on the public policy behind IPRA: that " 'all persons are entitled to the greatest possible information regarding the affairs of government.' " *Id.* (quoting N.M. Stat. Ann. § 14-2-5 (2019)). The court explained that "[a]llowing private entities who contract with a public entity 'to circumvent a citizen's right of access to records by contracting' with a public entity to provide a public function 'would thwart the very purpose of IPRA and mark a significant departure from New Mexico's presumption of openness at the heart of our access law.' " *Id.* (quoting *Toomey*, 2012-NMCA-104, ¶ 26). Third, the court noted that the settlement agreements clearly would have been subject to disclosure if they had been entered into directly with NMCD. *Id.* at *6. For all these reasons, the court held that the settlement agreements were subject to disclosure. "Regardless of whether Respondent was a third-party private entity, the settlement agreements at issue arose from allegations resulting from Respondent's performance of a public function—providing medical care to inmates—and as such, the

settlement agreements resulted from the medical care provided to New Mexico inmates while under contract with the State." *Id.*

¶ 39     Thus, although the New Mexico statute contains different language, the court was guided by the same principles that inform our analysis. The statute is to be construed broadly in favor of disclosure. The contractor stood in the shoes of the Department of Corrections when it provided medical care to inmates. Settlement agreements in inmate suits alleging inadequate medical care are clearly subject to disclosure when entered directly with the government. The settlement agreement was related to the provision of medical care to inmates, and public bodies may not avoid disclosure obligations by delegating their governmental function to a third party. The conclusion that the settlement agreements were subject to disclosure was as obvious to the New Mexico court as it is to us.

¶ 40                                                CONCLUSION

¶ 41     For all the above reasons, we affirm the judgment of the appellate court, which held that the settlement agreement was subject to disclosure. In the language of section 7(2), the settlement agreement is in the possession of Wexford, with whom the DOC has contracted to provide medical care to inmates on its behalf, and the settlement agreement directly relates to the medical care that Wexford provided to an inmate. Thus, it is a public record of the DOC for purposes of FOIA. Because the trial court concluded that the agreement was not subject to disclosure, it did not consider Wexford's alternative argument that certain information in the agreement was exempt under various provisions of FOIA and should be redacted. We thus remand the case to the trial court for consideration of that issue.

¶ 42     Appellate court judgment affirmed.

¶ 43     Circuit court judgment reversed.

¶ 44     Remanded.

¶ 45     JUSTICE THEIS, dissenting:

¶ 46     The primary goal of statutory construction is to determine and to effectuate the legislature's intent as expressed through the statutory language. Yet, in finding this document subject to disclosure, the majority overrides the clearly expressed legislative intent regarding the type of settlement agreements that are public records under FOIA. Further, the majority reaches beyond the text of the document and relies on unwarranted assumptions to conclude that a financial transaction between two private parties constitutes a public record that must be disclosed under FOIA. Therefore, I respectfully dissent.

¶ 47     To reach its conclusion that this document is subject to disclosure, the majority essentially rewrites sections 2.20 and 7(2) of FOIA. The majority first edits the words "by or on behalf of a public body" from section 2.20. See *supra* ¶ 18 ("section 2.20 was added to FOIA to clarify that settlement agreements are indeed public records"); *supra* ¶ 20 ("section 2.20 was intended as a clarification that settlement agreements are public records"). Then, though it mentions the phrase "directly relates to the governmental function" in section 7(2), the majority glosses over the fact that this record, standing alone, does not directly relate to Wexford's provision of medical care. The majority recites established principles of statutory construction (see *supra* ¶ 14), but it fails to adhere to them.

- 13 -

¶ 48    At issue here is whether Wexford's settlement agreement with the decedent's estate is a public record that must be disclosed under FOIA. Because FOIA contains a specific provision addressing settlement agreements, our analysis must begin there. Section 2.20 provides, in part, that "[a]ll settlement agreements entered into by or on behalf of a public body are public records subject to inspection and copying by the public, provided that information exempt from disclosure under Section 7 of this Act may be redacted." 5 ILCS 140/2.20 (West 2014). Based on this unambiguous text, the public is entitled to inspect and copy two types of settlement agreements: (1) those entered into by a public body and (2) those entered into on behalf of a public body.

¶ 49    Wexford's settlement agreement with Mr. Franco's estate fits into neither statutorily prescribed category. A public body is defined as "all legislative, executive, administrative, or advisory bodies of the State, state universities and colleges, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees, or commissions of this State, any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees thereof, and a School Finance Authority created under Article 1E of the School Code." *Id.* § 2(a). Wexford is none of those; it is a correctional health care company. Thus, the agreement was not entered into *by* a public body.

¶ 50    Additionally, though Wexford has contracted with a public body, this settlement agreement was not *on behalf of* the Illinois Department of Corrections. Indeed, in a pleading before the circuit court, the DOC clarified that neither it nor its employees were involved in the decedent's case. Rather, Wexford, through its insurer, chose to settle a lawsuit brought by the decedent's estate. The DOC was not a party to, or even mentioned in, the agreement. It only received a copy of that document in connection with these proceedings.

¶ 51    Further, Wexford's settlement with the decedent's estate was not paid with public funds. One of the main justifications for requiring disclosure of a public body's settlement agreement is that the public has a right to know how the public body has spent public resources. Under FOIA, "[a]ll records relating to the obligation, receipt, and use of public funds of the State, units of local government, and school districts are public records subject to inspection and copying by the public." *Id.* § 2.5; see *State Journal-Register v. University of Illinois Springfield*, 2013 IL App (4th) 120881, ¶ 60 (observing that "the public has a legitimate interest in the spending of a public university"); see also *Better Government Ass'n v. Village of Rosemont*, 2017 IL App (1st) 161957, ¶ 27 (confirming "that the public has a right to know about the sources and dispositions of public funds"). That justification does not apply here, where public funds did not satisfy the settlement.

¶ 52    The majority makes the stunning assertion that the legislature's use of the term "public body" in section 2.20 is not "particularly significant." *Supra* ¶ 18. Its analysis of that provision essentially ignores the phrase "by or on behalf of a public body." However, the legislature included those words in the statute to clarify that only settlement agreements entered by a public body, or on behalf of a public body, would be deemed public records. See *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15 (noting that, where possible, "[e]ach word, clause, and sentence of a statute must be given a reasonable meaning"). The majority asserts that section 2.20 does nothing more than "clarify that settlement agreements are indeed public records." *Supra* ¶ 18. However, the plain

language demonstrates that there is an express limitation on the type of settlement agreements that are public records.

¶ 53    The majority further contends that "it cannot be the case that the mere use of the term 'public body' excludes parties who contract to perform governmental functions on behalf of a public body." *Supra* ¶ 18. We have long found that the statutory language is the "most reliable indicator" of the legislature's intent. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 56. And "no rule of construction *** authorizes a court to declare that the legislature did not mean what the plain language of the statute imports." *Kunkel v. Walton*, 179 Ill. 2d 519, 534 (1997).

¶ 54    Through section 2.20 of FOIA, the General Assembly chose to constrain the category of settlement agreements that will be deemed public records to those that are either by, or on behalf of, a public body. Given the definition of public records, "all *** documentary materials pertaining to the transaction of public business" (5 ILCS 140/2(c) (West 2014)), this limitation makes sense. The legislature rationally could have determined that only specified settlement agreements, for example, those paid with public funds, pertain to the transaction of public business, such that they should be disclosed to the public. See generally *Estate of Cole v. Ferrell*, 2011-IA-01103-SCT (Miss. 2012) (ruling that, where a "settlement agreement is between private parties, does not involve matters of public concern, and is not necessary to resolve the [underlying] claim, its confidentiality should be preserved"). This settlement agreement was not satisfied with public funds and does not directly speak to the governmental function that Wexford performs—providing medical care to inmates. Therefore, it presents no public interest.

¶ 55    In sum, because Wexford's settlement agreement with the decedent's estate was not entered into by or on behalf of a public body, the plain language of section 2.20 dictates that it was not a public record and, thus, not subject to disclosure. See, *e.g.*, *Nelson v. Kendall County*, 2014 IL 116303, ¶ 23 ("If the language of the statute is clear, it must be given effect without resort to other interpretive aids.").

¶ 56    Section 2.20 specifically addresses settlement agreements; therefore, that provision governs this case, not section 7(2) as the majority holds. See, *e.g.*, *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 32 (" 'The more specific of two statutes dealing with a common subject matter generally will prevail whether it has been passed before or after the more general statute.' " (quoting 82 C.J.S. *Statutes* § 482 (2010))). That said, Wexford's settlement agreement also was not subject to disclosure under section 7(2). Under that section, "[a] public record that is not in the possession of a public body but is in the possession of a party with whom the agency has contracted to perform a governmental function on behalf of the public body, and that directly relates to the governmental function and is not otherwise exempt under this Act, shall be considered a public record of the public body, for purposes of this Act." 5 ILCS 140/7(2) (West 2014).

¶ 57    No one disputes that Wexford has contracted with the DOC to provide medical, dental, mental health, and pharmacy services to inmates in the DOC's custody. Wexford clearly performs a governmental function. Thus, the question before us is whether this settlement agreement (not the subject matter of the estate's underlying complaint) directly relates to Wexford's provision of medical care to the decedent, or any other inmate, such that it can be considered a public record.

¶ 58    Simply put, the answer is no. The settlement agreement does not directly relate to Wexford's provision of medical care. "Directly relates" was not defined in the statute, but we have found it "appropriate to employ a dictionary to ascertain the meaning of an otherwise undefined word or phrase." *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 8 (2009). The word "directly" in the statute modifies the verb "relates." Webster's Third New International Dictionary defines "directly," in part, as "without any intermediate step." Webster's Third New International Dictionary 641 (1993). It defines "relate," in part, as "to be in relationship." Webster's Third New International Dictionary 1916 (1993). Accordingly, a record possessed by a government contractor will be deemed a public record of the public body when it has an uninterrupted relationship with the governmental function. See *Chicago Tribune v. College of Du Page*, 2017 IL App (2d) 160274, ¶ 53 ("[F]or relief to be granted under section 7(2), a record must 'directly relate' to the governmental function performed on behalf of a public body. [Citation.] This requirement makes clear the legislature's intention that the general public may not access all of a third party's records merely because it has contracted with a public body to perform a governmental function.").

¶ 59    For example, putting privacy concerns to the side, medical records documenting the treatment that Wexford's employees provided to the decedent would have an uninterrupted relationship with the governmental function that it performs. Also, training manuals that Wexford's employees rely on to provide medical care to inmates would be directly related to the governmental function. Those documents have a direct relationship with its governmental function of providing health care.

¶ 60    By contrast, Wexford's settlement agreement with the decedent's estate does not have an uninterrupted relationship with its governmental function. The document does not discuss any aspect of the decedent's medical condition or Wexford's provision of medical care. Instead, it merely confirms that the estate made allegations against Wexford and that the company paid a certain amount of money to resolve the lawsuit, though it expressly denied liability for the claims. The settlement agreement may have a tangential relationship to Wexford's performance of a governmental function, but that does not suffice to make it a public record under section 7(2).

¶ 61    The majority reaches the contrary conclusion by misstating the question as "whether the settlement of a claim that an inmate died from inadequate medical care directly relates to the provision of medical care to inmates." *Supra* ¶ 25. It is unclear what basis the majority has for resurrecting allegations from the estate's lawsuit in federal court, rather than looking to the text of the settlement agreement itself, to determine whether the agreement is subject to disclosure. The majority concludes that this document constitutes a public record because it "involved the settling of a claim arising out of [Wexford's] rendering of medical care." (Internal quotation marks omitted.) *Supra* ¶ 22. The statute, however, requires the record to do more than simply "arise out" of the governmental function. It must "directly relate" to the function to be deemed a public record. See *In re Michelle J.*, 209 Ill. 2d 428, 437 (2004) (observing that this court is not at liberty to rewrite statutes).

¶ 62    In finding the connection between this settlement agreement and Wexford's performance of the governmental function "direct and obvious," the majority credits the allegation that "Wexford's inadequate medical care *** led to the death of an inmate." *Supra* ¶ 31. This assertion is problematic for at least two reasons. First, the majority implies that " 'Wexford

- 16 -

negligently caused the death of an inmate' " (see *supra* ¶ 33), even though there was neither a trial nor findings of fact to establish such causation. The record on appeal reveals that the decedent was a cancer patient. That condition may cause death even where an individual receives proper treatment.

¶ 63    Second, the fact that Wexford settled this lawsuit does not demonstrate its guilt. Companies choose to enter settlement agreements for reasons unrelated to their culpability. See, *e.g.*, *People ex rel. Wilcox v. Equity Funding Life Insurance Co.*, 61 Ill. 2d 303, 316 (1975) (observing that "[m]any factors enter into the consideration of the parties to litigation in arriving at a compromise settlement"); *Liberty Mutual Insurance Co. v. American Home Assurance Co.*, 368 Ill. App. 3d 948, 960 (2006) ("an agreement to settle does not constitute an admission of guilt"). In short, there is no basis to question Wexford's denial of liability for the decedent's death.

¶ 64    Despite the majority's heavy reliance on *Better Government Ass'n v. Illinois High School Ass'n*, 2017 IL 121124, it does not support the conclusion that this settlement agreement is subject to disclosure under FOIA. *Better Government Ass'n* did not involve a request for disclosure of a settlement agreement. At issue in that case was whether an association that "govern[ed] and coordinate[d] interscholastic athletic competitions for public and private secondary schools in Illinois" was a public body under FOIA and whether certain of its records should be considered public records of a public body. *Id.* ¶ 1. Specifically, a FOIA request had been made for all the association's "contracts for accounting, legal, sponsorship, and public relations/crisis communications services and all licensed vendor applications" for two fiscal years. *Id.* ¶ 8.

¶ 65    We observed that "section 7(2) ensures that governmental entities must not be permitted to avoid their disclosure obligations by contractually delegating their responsibility to a private entity." *Id.* ¶ 62. That said, we determined that the association had not contracted to perform a governmental function on behalf of the public body. Because no contract to perform a governmental function existed, we were not required to assess whether the documents were directly related to a governmental function before concluding that the records were not public records under section 7(2). *Id.* ¶ 65.

¶ 66    In this case, as noted above, there was a contract to perform a government function. However, nothing suggests that the DOC entered that contract to avoid its disclosure obligations. The DOC's contract with Wexford was renewed in 2011, well before plaintiffs initiated these proceedings. No evidence indicates that it entered the contract to avoid disclosing materials under FOIA. Further, the record shows that the DOC furnished these plaintiffs with responsive documents that were in its possession. As such, *Better Government Ass'n* is inapposite.

¶ 67    The majority finds that it would be incongruous to allow public access to settlement documents when the DOC provides medical care to an inmate, who then dies in its custody, but not when a private party provides the care. *Supra* ¶ 32. However, as I noted earlier, a key justification for requiring disclosure of settlement agreements by a public body is the public's right to know how public resources have been spent. See 5 ILCS 140/2.5 (West 2014). Where public funds did not satisfy the settlement, and without more, there is no basis to conclude that this settlement agreement between private entities constitutes a public record.

¶ 68    The majority acknowledges that private parties occupy a different position from public bodies as to their disclosure requirements under FOIA. *Supra* ¶¶ 29-30. Nonetheless, the majority has distorted two provisions of the statute to require disclosure of a settlement agreement between two private parties. I cannot agree. Accordingly, I respectfully dissent.

¶ 69    CHIEF JUSTICE BURKE took no part in the consideration or decision of this case.