2021 IL 126675

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126675)

MANCINI LAW GROUP, P.C., Appellant, v. THE SCHAUMBURG
POLICE DEPARTMENT, Appellee.

*Opinion filed December 16, 2021.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Theis, Neville, Michael J. Burke, and
Overstreet concurred in the judgment and opinion.

Justice Carter specially concurred, with opinion.

## OPINION

¶ 1    Mancini Law Group filed a request, pursuant to the Freedom of Information
Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2016)), seeking copies of traffic accident
reports from the Schaumburg Police Department (Department). The Department's
response indicated that certain information was redacted from the traffic accident

reports. Relevant here, the parties filed cross-motions for summary judgment. See 735 ILCS 5/2-1005 (West 2016). The circuit court of Cook County held that the Department had met its burden in demonstrating that the information at issue was exempt. The circuit court also rejected Mancini Law Group's argument that the Department was precluded from asserting that the information was exempt because it had voluntarily provided unredacted traffic accident reports to LexisNexis, a third-party vendor approved by the State of Illinois for purposes of assisting the Department in satisfying its mandatory reporting obligations under the Illinois Vehicle Code. See 625 ILCS 5/11-408 (West 2016). Mancini Law Group appealed only the issue of whether the Department was barred from arguing that the information was exempt based on its arrangement with LexisNexis. A majority of the appellate court panel affirmed. See 2020 IL App (1st) 191131-U, ¶ 25. We allowed Mancini Law Group's petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. Oct. 1, 2020).

¶ 2                                    BACKGROUND

¶ 3        On July 13, 2017, Mancini Law Group sent a commercial FOIA request[1] to the Department seeking disclosure of all traffic accident reports for all motor vehicle accidents having occurred within the Village of Schaumburg between June 30, 2017, and July 13, 2017. In its request, Mancini Law Group asked that the Department redact certain personal information, including driver's license numbers, license plates, and dates of birth of the parties involved. On August 7, 2017, the Department informed Mancini Law Group that the request was granted in part and denied in part. The Department provided redacted accident reports, asserting that section 7(1)(b) of FOIA (5 ILCS 140/7(1)(b) (West 2016)) exempted private information contained in the reports, specifically including driver's license numbers, personal telephone numbers, home addresses, and personal license plates. Additionally, the Department relied upon section 7(1)(c) of FOIA (*id.* § 7(1)(c)) in

---

[1]Section 3.1 of FOIA governs "Requests for commercial purposes." 5 ILCS 140/3.1 (West 2016). Section 2(c-10) of FOIA defined "commercial purpose" in part as "the use of any part of a public record or records, or information derived from public records, in any form for sale, resale, or solicitation or advertisement for sales or services." *Id.* § 2(c-10).

redacting dates of birth and policy account numbers. The names of those involved in the accidents—including drivers and witnesses—were left unredacted.

¶ 4      Mancini Law Group filed suit [2] on October 17, 2017, alleging that the Department had willfully and intentionally violated FOIA by refusing to produce unredacted accident reports. See *id.* § 11(a) ("Any person denied access to inspect or copy any public record by a public body may file suit for injunctive or declaratory relief."). On October 27, 2017, the Department filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2016)), which was denied. Thereafter, Mancini Law Group and the Department filed cross-motions for summary judgment, which were fully briefed.[3]

¶ 5      In its order, the circuit court noted that Mancini Law Group raised the issue of voluntary disclosure for the first time in its reply to its motion for summary judgment. Specifically, Mancini Law Group cited *Lieber v. Board of Trustees of Southern Illinois University*, 176 Ill. 2d 401, 413 (1997), for the proposition that, because the Department had provided unredacted copies of traffic accident reports to LexisNexis, it could not refuse to provide those records to Mancini Law Group. Mancini Law Group attached an affidavit of one of its attorneys, Michael Camarata, to show that he was able to purchase unredacted traffic accident reports from LexisNexis on numerous occasions. Attached to the affidavit was an e-mail-generated receipt from LexisNexis and a copy of an unredacted traffic accident report.

¶ 6      In its response, the Department argued first that *Lieber* is no longer good law in light of the 2010 amendments to FOIA. Furthermore, the Department contended that *Lieber* considered a different exemption under FOIA than that at issue here. Finally, the Department alternatively asserted that *Lieber* is distinguishable. Specifically, the Department explained in part:

---

[2]See 5 ILCS 140/9.5(b) (West 2016) ("A person whose request to inspect or copy a public record is made for a commercial purpose as defined in subsection (c-10) of Section 2 of this Act may not file a request for review with the Public Access Counselor.").

[3]Mancini Law Group titled the motion for summary judgment as a motion for "partial" summary judgment. As noted by the circuit court, the motion did not indicate what portion of the complaint it sought to partially move on. The court indicated that it construed the motion as excluding Mancini Law Group's request for a declaration that the Department willfully and intentionally violated FOIA. This interpretation of Mancini's motion has not been challenged.

"Here, the facts establish that Lexis-Nexis only receives as a verified third-party vendor for the State of Illinois in order to allow the Village to comply with the mandated reporting under the Illinois Vehicle Code. [Citation.] The crash reports are uploaded into approved software that is managed through both a contract between the Village and Lexis-Nexis and additionally, Lexis-Nexis has a contract with the State of Illinois. [Citations.] Contrary to the Plaintiff's argument that there are no restrictions on what LexisNexis can provide, Ms. Brack testified that the Village has monitored and restricted access to police reports to try and keep confidential information safe and that the agreement with LexisNexis requires compliance with FOIA. [Citation.]

A key distinction in this case compared to *Lieber* is that Lexis-Nexis is not receiving these reports through a FOIA request or for preferential treatment. In fact, Lexis-Nexis routinely submits FOIA requests for accident reports and has to go through the same process as everyone else and is subject to redactions. [Citation.] They do not merely access the crash report database to pull the reports they want without paying. [Citation.] Rather, LexisNexis receives these reports as part of the Village's state mandating [*sic*] reporting. This is very different than the situation in *Lieber*, where the documents were disclosed to the newspapers and part of the public domain. These were not in the public domain, but are managed on a server and only accessible to limited individuals and privacy agreements."

¶ 7        The circuit court rejected the Department's arguments that the 2010 amendments to FOIA overruled *Lieber* and that *Lieber* was not on point because it addressed a different FOIA exemption. The court observed that it could decline to consider Mancini Law Group's arguments regarding *Lieber* and voluntary disclosure because Mancini had not raised the argument in its opening motion for summary judgment but would address the argument based upon the Department's acquiescence.

¶ 8        The circuit court concluded that *Lieber* was distinguishable, explaining:

"In *Lieber*, the university *selectively* and voluntarily disclosed the disputed requested information to other third parties on a routine basis, while here, there is no evidence of the Department voluntarily or selectively releasing such information previously requested by Mancini to other third parties. Rather, any

- 4 -

disclosure by the Village is to comply with Illinois law. Specifically, the Village is statutorily mandated to provide similar information, namely un-redacted accident reports, to Lexis Nexis to comply with the Vehicle Code's mandatory reporting requirements. *** The Court finds that this disclosure to LexisNexis does not rise to the level of selective, voluntary disclosure articulated in *Lieber* and thus does not find any waiver of the asserted exemptions by the Village." (Emphasis added.)

Accordingly, the court held that the Department met its burden, by clear and convincing evidence, that the information at issue was exempt and thus was appropriately redacted. See 5 ILCS 140/11 (West 2016). By extension, the court determined that Mancini Law Group had not met its burden in showing the Department had failed to produce all of the non-exempt records under FOIA.

¶ 9        Mancini Law Group appealed only the issue of whether the Department had lost any right to withhold the unredacted accident report records due to having previously and voluntarily provided unredacted accident reports to LexisNexis. See 2020 IL App (1st) 191131-U, ¶ 2; see also *id.* ¶ 8 (noting that Mancini Law Group did "not argue that the redacted information is not exempt").

¶ 10       A majority of the panel affirmed entry of summary judgment in favor of the Department, concluding that, "based on the actual record before us, [Mancini Law Group] has not presented sufficient facts to establish that [the Department's] conduct amounts to waiver under the rule articulated in *Lieber*." *Id.* ¶ 25.

¶ 11       Justice Hyman dissented, arguing that Mancini Law Group showed that the Department contracted "with LexisNexis to allow it to sell the unredacted accident reports to the public, without restrictions or privacy protections." *Id.* ¶ 32 (Hyman, J., dissenting). Thus, according to the dissent, the Department went beyond contracting with LexisNexis to simply satisfy its reporting requirement and violated *Lieber*. *Id.* ¶ 35. The dissent observed that the Illinois FOIA is patterned after the federal FOIA and that federal case law is instructive. See *id.* ¶ 36. The dissent cited *Watkins v. United States Bureau of Customs & Border Protection*, 643 F.3d 1189 (9th Cir. 2011), for the proposition that a statutorily required disclosure can still lead to "waiver" of an exemption where there is a "no-strings-attached" disclosure. 2020 IL App (1st) 191131-U, ¶ 37 (Hyman, J., dissenting) (" '[t]his no-strings-attached disclosure *** voids any claim to confidentiality and constitutes a

waiver' " (quoting *Watkins*, 643 F.3d at 1197)). Ultimately, the dissent would reverse and remand for further proceedings, concluding that a question of material fact remained as to whether LexisNexis "sells unredacted reports to its customers." *Id.* ¶ 43. The dissent further concluded that, "in disclosing unredacted accident reports to LexisNexis without restrictions (as provided in the contract with [the Department]), [the Department] fails to protect the privacy of individuals." *Id.* ¶ 45; see also *id.* (observing that "[t]he contract between [the Department] and LexisNexis *** places no restriction on LexisNexis and provides none of the privacy protections the FOIA envisions").

¶ 12      Mancini Law Group filed for leave to appeal pursuant to Illinois Supreme Court Rule 315 (eff. Oct. 1, 2020), which this court allowed.

¶ 13                                    ANALYSIS

¶ 14      This appeal arises from the circuit court's resolution of the parties' cross-motions for summary judgment. Motions for summary judgment are governed by section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2016)). *Pielet v. Pielet*, 2012 IL 112064, ¶ 29. Pursuant to section 2-1005,

> "summary judgment should be granted only where the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law." *Id.*

¶ 15      "When parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and that only a question of law is involved." *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 13 (citing *Jones v. Municipal Employees' Annuity & Benefit Fund*, 2016 IL 119618, ¶ 26). Accordingly, "[i]n appeals from summary judgment rulings, our review is *de novo*." *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 459 (2003) (citing *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001)).

¶ 16      In conducting our review, we must be mindful that, pursuant to FOIA, "public records are presumed to be open and accessible." *Illinois Education Ass'n*, 204 Ill.

2d at 462 (citing *Lieber*, 176 Ill. 2d at 407). Section 1 of FOIA prescribes the public policy of Illinois and legislative intent of FOIA. 5 ILCS 140/1 (West 2016). That section provides, in pertinent part:

> "The General Assembly hereby declares that it is the public policy of the State of Illinois that access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government. It is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act.

> This Act is not intended to cause an unwarranted invasion of personal privacy, nor to allow the requests of a commercial enterprise to unduly burden public resources, or to disrupt the duly-undertaken work of any public body independent of the fulfillment of any of the fore-mentioned rights of the people to access to information." *Id.*

Furthermore, a presumption exists that "[a]ll records in the custody or possession of a public body are presumed to be open to inspection or copying." *Id.* § 1.2. In the event a public body asserts that a record is exempt from such disclosure, the public body bears the burden of proving by clear and convincing evidence that the record is exempt. *Id.* Exemptions are provided in section 7 of FOIA. *Id.* § 7; see also *id.* § 3(a) ("Each public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Sections 7 and 8.5 of this Act."). In line with the presumption set forth in section 1.2 of FOIA, exemptions "are to be read narrowly." *Lieber*, 176 Ill. 2d at 407.

¶ 17 Before this court, Mancini Law Group asserts only that the Department is precluded from asserting applicable exemptions by voluntarily disclosing the information to LexisNexis when it did not redact the accident reports in any way nor proscribe what LexisNexis could do with those reports. Mancini Law Group frames the issue as "Did [the Department] waive the right to withhold names and addresses on traffic accident reports where [the Department] previously produced the entirely unredacted reports to a third-party reseller without restriction?" As established, however, the Department did not redact names appearing on the traffic accident reports. Furthermore, Mancini Law Group's argument targets more than just names and home addresses—if Mancini Law Group prevails, it would additionally have access to individuals' home or personal phone numbers, personal

- 7 -

license plates, driver's license numbers, dates of birth, and insurance policy account numbers.

¶ 18    Despite Mancini Law Group's lack of argument as to whether any of the information contained in the accident reports was properly held by the circuit court to be exempt, we briefly mention the two exemptions at issue below. For purposes of this appeal, section 7 of FOIA provides, in relevant part:

> "(1) When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, the public body may elect to redact the information that is exempt. The public body shall make the remaining information available for inspection and copying. Subject to this requirement, the following shall be exempt from inspection and copying:
>
> ***
>
> (b) Private information, unless disclosure is required by another provision of this Act, a State or federal law or a court order.
>
> ***
>
> (c) Personal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of the information. 'Unwarranted invasion of personal privacy' means the disclosure of information that is highly personal or objectionable to a reasonable person and in which the subject's right to privacy outweighs any legitimate public interest in obtaining the information. The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy." 5 ILCS 140/7(1) (West 2016).

Again, the circuit court held—and Mancini Law Group did not contest on appeal— that section 7(1)(b) exempted driver's license numbers, personal telephone numbers, home addresses, and personal license plates as constituting private information that was not required to be disclosed by another "provision of this Act,

a State or federal law or a court order."[4] See *id.* § 7(1)(b). Also, the court held section 7(1)(c) exempted dates of birth and policy account numbers as qualifying as "personal information." See *id.* § 7(1)(c).

¶ 19    Here, Mancini Law Group does not dispute that the Department has mandatory reporting requirements under the Vehicle Code such that accident reports must be forwarded to the Secretary of State and the Department of Transportation. See 625 ILCS 5/11-408 (West 2016). However, Mancini Law Group takes issue with several facets of *how* the Department has opted to fulfill this obligation.

¶ 20    First, Mancini Law Group complains that, although LexisNexis is a state-approved vendor for purposes of fulfilling the Department's reporting obligation, nothing required the Department to use LexisNexis. Mancini Law Group characterizes LexisNexis as a third-party business and contends that the Department could instead have sent the traffic accident reports directly to the State.

¶ 21    Second, Mancini Law Group takes issue with the fact that LexisNexis is permitted to sell the traffic accident reports for $13 and remits $5 to the Department. Mancini Law Group argues that, if the Department was providing the reports directly, it would not be allowed to charge more than $5 per report. As such, Mancini Law Group posits that the Department's arrangement with LexisNexis circumvents the $5 statutory cap on charges per report. See *id.* § 11-416.

¶ 22    Third, Mancini Law Group asserts there are no restrictions in the agreement between the Department and LexisNexis as to what information in the reports LexisNexis may provide. Mancini additionally strongly intimates that any member of the public could access the traffic accident reports in unredacted form simply by paying $13 to LexisNexis. Mancini Law Group thus cites *Lieber* for the proposition

---

[4]The circuit court also noted that FOIA defines "private information" as

"unique identifiers, including a person's social security number, driver's license number, employee identification number, biometric identifiers, personal financial information, passwords or other access codes, medical records, home or personal telephone numbers, and personal email addresses. Private information also includes home address and personal license plates, except as otherwise provided by law or when compiled without possibility of attribution to any person." 5 ILCS 140/2(c-5) (West 2016).

that "voluntary disclosure in one situation can preclude later claims that records are exempt from release to someone else." See *Lieber*, 176 Ill. 2d at 413.

¶ 23    The Department counters that *Lieber*'s waiver rule was overturned by the 2010 amendments to FOIA and thus does not apply. The Department adds that *Lieber* interpreted a different FOIA exemption, which used different standards for disclosure. Finally, the Department contends that, even if *Lieber* is applicable, waiver did not occur by virtue of the Department's production of the unredacted accident reports to LexisNexis where said production is part of the Department's statutory duty. We now turn to a detailed discussion of *Lieber*.

¶ 24                              *Lieber v. Board of Trustees of*
                                 *Southern Illinois University*

¶ 25    At issue in *Lieber* was whether Southern Illinois University (SIU) was required by FOIA to provide Lieber, the owner of an apartment building approved for freshman students, with a list of names and addresses of those who had contacted SIU about freshman housing. *Id.* at 403. SIU's past practice was to supply Lieber and other owners of approved off-campus housing with this information to enable the owners to directly contact incoming freshman about their respective housing options. *Id.* at 404. Additionally, SIU "routinely supplied" a local newspaper and various religious organizations with mailing labels filled out with the names and addresses of incoming students. *Id.* SIU provided students' names and addresses to state representatives who requested them. *Id.* Lastly, SIU provided other educational institutions that students had transferred from with those students' Social Security numbers, academic major, and number of hours of study completed. *Id.*

¶ 26    Following dropping enrollment and a decline in occupancy rates in student housing, the result was "more competition between the various housing providers." *Id.* SIU responded by requiring off-campus housing owners to rely on their own resources for advertising and publicity and became uncooperative in releasing incoming students' names and addresses to Lieber. *Id.* Lieber in turn filed FOIA requests seeking release of the names and addresses of incoming students. *Id.* SIU granted the request as to freshman enrolled in the fall of 1992. *Id.* at 405.

¶ 27    The next year, SIU officially discontinued providing names and addresses of incoming students to owners of approved off-campus housing. Lieber received at least one more list of admitted freshmen's names and addresses. Upon discovering this release of information, SIU's vice president of student affairs directed that the new policy be implemented and forbade dissemination of address labels to landlords of approved off-campus housing for freshmen. *Id.*

¶ 28    Lieber again filed a FOIA request seeking release of address list information for those inquiring about freshman housing for the upcoming academic year, including inquiries from accepted freshmen. *Id.* at 405-06. Lieber sought this information so he could do the mailings himself as he had done previously. *Id.* SIU denied Lieber's request, asserting that (1) FOIA does not require release of information that is intended to be used for commercial purposes and (2) the information was exempt from disclosure because federal law restricted release of student information. *Id.* at 406.

¶ 29    Lieber sought judicial review, and SIU maintained its argument that Lieber was not entitled to relief because he sought the information for commercial purposes, but this time, SIU cited a different exemption. *Id.* at 406-07. SIU instead argued that the information was exempt under section 7(1)(b)[5] because it constituted "personal information maintained with respect to students or other individuals receiving educational services from a public body." *Id.* at 406. The circuit court granted summary judgment in favor of SIU, citing its argument that the requested information was for commercial purposes. *Id.* at 407. The appellate court reversed and remanded with directions that summary judgment be entered in Lieber's favor in part because SIU had failed to show that the requested information was exempt under section 7 of FOIA. *Id.*

¶ 30    This court initially noted the appellate court's analytical error. The *Lieber* court explained that the appellate court erroneously engaged in a balancing test to determine whether the information was exempt. *Id.* at 408-09 (citing 5 ILCS 140/7(1)(b) (West 1994)); see also *id.* at 408 (noting that the appellate court held "that even if information falls within a specific exemption, the court must still make an independent determination as to whether disclosure would amount to 'a clearly

_____

[5]At the time of Mancini Law Group's suit, section 7(1)(b) provided for a different exemption than that addressed in *Lieber*.

unwarranted invasion of personal privacy' "). Instead, this court made clear that a "*per se*" approach was to be followed where information fell into the specific, narrow exemptions set forth in section 7. *Id.* at 409. Such *per se* exemptions protect information that, "by definition, constitute[s] '[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy.' " *Id.* at 409-10 (quoting 5 ILCS 140/7(1)(b) (West 1994)). This *per se* approach, according to the *Lieber* court, is consistent with the "clear and unambiguous language of the statute." *Id.* at 409 (citing *Healey v. Teachers Retirement System*, 200 Ill. App. 3d 240, 244-45 (1990)). Where the public body proves that the requested information "falls within one of these specifically enumerated categories ***, *no further inquiry by the court is necessary*." (Emphasis added.) *Id.* at 408. The plain language of section 7 provides that these documents " 'shall be exempt from inspection and copying.' " *Id.* (quoting 5 ILCS 140/7(1) (West 1994)). This *per se* rule applies to most of the section 7 exemptions. *Id.*

¶ 31 However, in detailing the proper analysis, the *Lieber* court was careful to note that it was not holding that the factors considered by the appellate court would never be "appropriate in determining whether information is exempt under section 7(1)(b)." *Id.* at 409. This is because section 7(1)(b) did not purport to contain an exhaustive list of information that would constitute a clearly unwarranted invasion of personal privacy if disclosed. *Id.*

¶ 32 The *Lieber* court then stated that, "[d]espite the appellate court's analytical error, we agree with its conclusion that section 7(1)(b)(i) does not apply to the information requested by Lieber here." *Id.* at 410. The court observed that section 7(1)(b)(i) did not apply to the information requested by Lieber because the information did not pertain to students or those receiving educational services from a public body. *Id.* (explaining that one is not normally considered a student until having attended class at the institution). Lieber's request was technically aimed at those who would not be freshmen until the following academic year, who might decide not to live in approved off-campus housing, and who might still decide not to attend SIU. *Id.* at 411. Ultimately, this court concluded that the information sought (1) did not constitute a *per se* exemption nor (2) " '[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy.' " *Id.* at 410 (quoting 5 ILCS 140/7(1)(b) (West 1994)).

¶ 33    *Lieber* explained that "[t]here is another, equally fundamental, impediment to the University's reliance on section 7(1)(b)(i)." *Id.* at 411. SIU's argument also failed because the legislature had intended that "personal information" encompass not simply basic identification information of just anyone. *Id.* at 411-12. Rather, that provision was meant to protect the "personal information" of only certain specified individuals. *Id.* at 412. "Personal information," according to *Lieber*, was meant to be understood as "information that is 'confidential' or 'private.' " *Id.*

¶ 34    After this court explained that "personal information" meant more than basic identification information, *i.e.*, names and addresses, the court reached the topic of voluntary disclosure and waiver. It is to this part of the opinion that the parties direct our attention. *Lieber* explained:

> "Even if one disagrees with this proposition, the University's claimed exemption must fail. Although the University has strenuously invoked the *notion* that the names and addresses of accepted students are private and must be protected from disclosure, materials submitted to the trial court indicate that the University routinely makes available to other groups, including the local newspaper and religious organizations, lists containing the names and addresses of individuals who have been accepted by the University but who have not yet enrolled. *In addressing similar situations* under the federal Freedom of Information Act, the federal courts have held that *voluntary disclosure in one situation can preclude later claims that records are exempt from release to someone else*. *Cooper v. United States Department of the Navy*, 594 F.2d 484, 485-85 (5th Cir. 1979). As the Eighth Circuit Court of Appeals explained, selective disclosure by the government

>> 'is offensive to the purposes underlying the FOIA and intolerable as a matter of policy. Preferential treatment of persons or interest groups fosters precisely the distrust of government the FOIA was intended to obviate.' *State of North Dakota ex rel. Olson v. Andrus*, 581 F.2d 177, 182 (8th Cir. 1978).

>> We agree with these principles and believe they should be applied here to bar the University from asserting an exemption under section 7(1)(b)(i) of Illinois' Freedom of Information Act. If the address lists can be disclosed to

campus ministries and the local newspaper, the University has no valid basis for withholding them from Stan Lieber." (Emphases added.) *Id.* at 412-13.

¶ 35    Returning to the instant appeal, the parties focus our attention on the purported voluntary and selective aspects of the arrangement between the Department and LexisNexis and alternatively propose that this court adhere to one of two different waiver rules. We now address the parties' arguments.

¶ 36    First, we reject the Department's argument that *Lieber*'s waiver rule is no longer valid following the 2010 amendments to FOIA. At the time of *Lieber*, section 7(1) stated only that "[t]he following shall be exempt from inspection and copying." 5 ILCS 140/7(1) (West 1994). Pertinent to this argument, section 7(1) was amended to provide:

> "When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, *the public body may elect to redact* the information that is exempt. The public body shall make the remaining information available for inspection and copying." (Emphasis added.) Pub. Act 96-542, § 10 (eff. Jan. 1, 2010) (amending 5 ILCS 140/7(1)).

The Department asserts that this amendment means that a public body may pick and choose when to redact exempt information—and that such legislatively bequeathed discretion means the Department cannot be found to have waived its ability to assert that information is exempt. The proposition simply is not borne out by the amendment. *Lieber* is also not rendered inapplicable on the basis that the legislature restructured the exemptions under FOIA. The Department contends that, by adding a specific definition and exemption for "private information" to section 7 of FOIA, the legislature further intended to overturn *Lieber*. Instead, the legislature's addition of the exemption for private information indicates that the legislature decided to break with *Lieber* on this basis and afford protection to a broader category of information that was not previously deemed to be exempt. Regardless, as noted below, Mancini Law Group relies on *Lieber* not for its exemption analysis but for its waiver rule.

¶ 37    Second, we make clear that we are not bound by *Lieber*'s waiver rule because *Lieber* is distinguishable. Unlike in *Lieber*, where SIU failed to prove that the

information at issue was protected by an exemption, there is no dispute as to whether the information at issue here is protected under sections 7(1)(b) and 7(1)(c). In *Lieber*, after explaining why the names and addresses of yet-to-be students did not qualify as exempt, the court went on to demonstrate what essentially was a hypocritical position taken by SIU. The court explained that the "*notion* that the names and addresses of accepted students are private and must be protected from disclosure" was directly undermined by SIU's previous behavior of freely disseminating the information to various groups. (Emphasis added.) *Lieber*, 176 Ill. 2d at 412-13. The court cited two federal cases in support of its discussion of voluntary disclosure and the impermissibility of selective disclosure by the government and preferential treatment of persons or interest groups. *Id.* at 413 (citing *Cooper v. Department of the Navy*, 594 F.2d 484, 485-85 (5th Cir. 1979), and *State ex rel. Olson v. Andrus*, 581 F.2d 177, 182 (8th Cir. 1978)). The *Lieber* court thereafter noted that "[t]he only reason the University has treated Lieber differently is that he is in direct competition with the University for what is apparently a dwindling freshman housing market." *Id.* Also, as noted, the legislature later clarified that home addresses are exempt information. See 5 ILCS 140/2(c-5), 7(1) (West 2010).

¶ 38        We instead rely on since-evolved federal case law that is directly applicable to the issue before us. See *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 55 ("Due to the similarity of the statutes, Illinois courts often look to federal case law construing the federal FOIA for guidance in construing FOIA.").

¶ 39                          *Sherman v. United States Department of the Army*

¶ 40        Though cited by neither party, in *Sherman v. United States Department of the Army*, 244 F.3d 357, 359 (5th Cir. 2001), the Fifth Circuit Court of Appeals addressed whether the United States Army waived the ability to redact service personnel's Social Security numbers (SSNs) from award orders. By way of background, when Army officials approved individual or unit decorations, that action was announced via an award order. *Id.* Typically, such orders contained the following information: a soldier's name, rank, and unit; specific information relating to the conduct warranting the award; and a soldier's identification number. *Id.* Before 1968, the soldiers listed in the awards were identified by Army serial

number. *Id.* However, beginning in 1968 and through the 1990s, those soldiers were instead identified by their Social Security numbers. *Id.*

¶ 41 The Army had hired a contractor to compile the award orders issued during the Vietnam era into a computerized database. *Id.* The public could still access paper copies of most of the award orders, including those issued between 1965 and 1973 via the Army or the National Archives. *Id.* at 359-60. However, to investigate Vietnam-era award inquiries and fulfill related information requests, the Army predominately relied on the computerized database. *Id.* at 360. Stephen Sherman requested computer-tape copies of the orders issued between 1965 and 1973. *Id.* The Army offered computer copies of the orders issued from 1964 to 1967 but, for the orders from 1968 to 1973, redacted all Social Security numbers pursuant to exemption 6[6] of the federal FOIA and a corresponding Army regulation "to avoid a clearly unwarranted invasion of the privacy interests of Army personnel." *Id.*

¶ 42 Relevant here, Sherman sought an injunctive order requiring the Army to produce unredacted copies of the requested documents. *Id.* Following cross-motions for summary judgment, the district court held that the redaction was proper pursuant to exemption 6. *Id.* On appeal to the Fifth Circuit, Sherman raised two issues for review. The first issue required the Fifth Circuit to consider the following: "(1) Did the Army waive its authority to exercise exemption 6 by publicly releasing the SSNs of service personnel to the public in other instances." *Id.* The *Sherman* court began its review by noting that the United States Supreme Court had broadly interpreted the files falling under exemption 6 to include "any 'information which applies to a particular individual.' " *Id.* (quoting *United States Department of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)). When exemption 6 is at issue, federal courts " 'determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy' " (*id.* at 361 (quoting *Washington Post Co.*, 456 U.S. at 602)) necessitating a balancing of " 'the individual's right of privacy' against the basic policy of opening 'agency action to

---

[6]Exemption 6 of the federal FOIA "allows agencies to exempt from disclosure information contained in 'personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.' " *Sherman*, 244 F.3d at 361 (quoting 5 U.S.C. § 552(b)(6) (2000)).

- 16 -

the light of public scrutiny' " (*id.* (quoting *United States Department of State v. Ray*, 502 U.S. 164, 175 (1991))).

¶ 43    The *Sherman* court observed that the United States Supreme Court had defined the pertinent public interest as " 'the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to the public understanding of the operations or activities of the government.' " *Id.* (quoting *United States Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 491 (1994)). Furthermore, the United States Supreme Court has observed that "[t]hat interest is not implicated by disclosure of information about private citizens that has accumulated in various government files but reveals little or nothing about an agency's own conduct." *Id.* (citing *United States Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 773 (1989)). As to the privacy interest protected by exemption 6, the court noted that it was defined more broadly and " 'encompasses [an] individual's control of information concerning his or her person.' " *Id.* at 362 (quoting *Department of Defense*, 510 U.S. at 500).

¶ 44    Next, the *Sherman* court addressed whether the Army's alleged "pervasive public use of SSNs" waived the Army's authority to rely on exemption 6. *Id.* at 363. Specifically, Sherman noted the following: recreational passes and other orders contained both the names and SSNs of service members, which were distributed to other service members, airlines, hotels, and other public organizations; officers' whose promotion necessitated congressional confirmation had their SSNs published in the Congressional Register; the Army had purportedly "sold lists of officers, together with their SSNs and birth dates, through the Government Printing Office"; and the award orders Sherman sought were apparently published in hometown newspapers when issued. *Id.* The *Sherman* court considered and rejected two district court cases cited in support of Sherman's waiver argument. *Id.* Pertinent here, the *Sherman* court observed that one of those cases, *Kimberlin v. Department of Justice*, 921 F. Supp. 833 (D.D.C. 1996), "considered the role of waiver in the more analogous context of exemption 7(C)."[7]

---

[7]Exemption 7(C) applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information *** (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C.

*Sherman*, 244 F.3d at 363. *Kimberlin* had held that the Justice Department could not use exemption 7(C) to prevent the disclosure of sensitive files that had been released to the press. *Id.* The *Kimberlin* court had reasoned that any privacy interest in the information had been eradicated by the previous disclosure. *Id.* Furthermore, the *Kimberlin* court reasoned that a contrary holding would mean that the Justice Department " 'could selectively disclose non-public information to favored sources and then invoke FOIA exemptions to prevent disclosure to press sources not in their favor.' " *Id.* (quoting *Kimberlin*, 921 F. Supp. at 835). Sherman likewise proposed that, if the Army was found not to have waived reliance on exemption 6, the Army could then "selectively control disclosure of any documents containing SSNs." *Id.*

¶ 45        Nonetheless, the *Sherman* court explained:

"While we share the *Kimberlin* court's concern regarding selective disclosure with respect to those exemptions that protect *the government's interest* in non-disclosure of information, we conclude that this concern, and the related waiver analysis, are not implicated when a government agency relies on exemption 6 to prevent disclosure of personal information. The Supreme Court has explained that the privacy interest at stake in FOIA exemption analysis belongs to the individual, not the agency holding the information. [Citation.] Moreover, as noted, the fact that otherwise private information at one time or in some way may have been placed [in] the public domain does not mean that a person irretrievably loses his or her privacy interest in the information. [Citations.] Consistent with these established principles, we hold that only the individual whose informational privacy interests are protected by exemption 6 can effect a waiver of those privacy interests when they are threatened by a[ ] FOIA request. For that reason, we do not accept Sherman's argument that the Army waived its authority to implement exemption 6." (Emphasis in original.) *Id.* at 363-64.

---

§ 552(b)(7)(C) (2000). The *Sherman* court noted that circuit courts that had considered a waiver argument in the exemption 7(C) context reached similar results. 244 F.3d at 364 n.12 (noting that the Department of Justice "did not waive individual's privacy interest in investigation files recognized in exemption 7(C) by notifying public of ongoing criminal investigation involving individual" (citing *Fiduccia v. United States Department of Justice*, 185 F.3d 1035, 1047 (9th Cir. 1999))).

¶ 46    Having found that the Army did not waive its reliance on exemption 6, the *Sherman* court next considered whether the district court had properly balanced the public interest in disclosure of the information contained in Sherman's request. *Id.* at 364-66. Ultimately, the court concluded that the "invasion of the informational privacy interest of individual soldiers in disclosure of their SSNs would clearly be unwarranted in the absence of any public interest in those SSNs" and the Army had properly redacted the SSNs. *Id.* at 366-67.

¶ 47                                    The Instant Case

¶ 48    Here, we adopt the reasoning set forth in *Sherman* and conclude that an Illinois public body does not have the ability to waive an individual's interest in his or her personal or private information that is contained in a document subject to a FOIA request.[8] Mancini Law Group's arguments are a near mirror-image of those presented by the requester in *Sherman*. We additionally find that *Sherman*'s holding applies to the information at issue here—whether it was redacted under section 7(1)(b) or 7(1)(c), which concern private and personal information, respectively. The information at issue is attributable to private individuals and cannot be waived by the Department's handling or mishandling thereof. See also *Lakin Law Firm, P.C. v. Federal Trade Comm'n*, 352 F.3d 1122, 1124 (7th Cir. 2003) (relying on *Sherman* and holding that the Federal Trade Commission's release of withheld information to other law enforcement via a consumer fraud database did not waive individual consumers' privacy interests).

¶ 49    For purposes of completeness, we observe that we need not go on to engage in the balancing test undertaken by the Fifth Circuit in *Sherman* to determine if the public's interest in the information nevertheless outweighs personal privacy interests. The *Sherman* court first considered the issue of waiver before addressing whether the Army had "carried its burden in demonstrating that invasion of the personal privacy interest in preventing disclosure of SSNs would be clearly

_____

[8]Though not at issue here, waiver of an individual's interest in private information has been found where the *individual* voluntarily divulged the information at issue and placed it into the public domain. See *The Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995); see also 5 ILCS 140/7(1)(c) (West 2016) (providing that personal information may be disclosed where "the disclosure is consented to in writing by the individual subjects of the information").

unwarranted by the public interest in disclosure of those SSNs." *Sherman*, 244 F.3d at 364.

¶ 50      Here, as mentioned, the circuit court already held that the Department carried its burden proving, by clear and convincing evidence, that the information at issue is exempt under sections 7(1)(b) and 7(1)(c).[9] The court conducted the relevant inquiries pursuant to sections 7(1)(b) and 7(1)(c), Mancini Law Group does not take issue with the court's determinations, and we see no reason to revisit this aspect of the court's order.

¶ 51      Accordingly, we find that Mancini Law Group's arguments are meritless. First, it is irrelevant whether the Department could have chosen to fulfill its mandatory reporting obligations under the Vehicle Code in a different way. No one contests that LexisNexis was a state-approved vendor and thus the Department did not independently concoct its arrangement with LexisNexis. Although this court in *Lieber* disapproved of selective disclosure by the government that amounts to preferential treatment, the *Sherman* court later acknowledged such concerns only took shape when it was the "*government's interest*" in the information. (Emphasis in original.) *Id.* at 363. Here, we are dealing with individuals' interests in their personal or private information contained within traffic accident reports. No inference arises that selective or preferential treatment was thus given to LexisNexis. Furthermore, a common thread between *Lieber* and the two federal court decisions it cited in support of this proposition was the public body's or government's attempt to undermine an adversary's position. See *Lieber*, 176 Ill. 2d at 413 (observing that "[t]he only reason the University has treated Lieber differently is that he is in direct competition with the University for what is apparently a dwindling freshman housing market"); *Cooper*, 594 F.2d 484 (concerning an endorsement to an aircraft accident report that was given to defense counsel without authorization but not to counsel who was representing the survivors of one killed in a Marine Corps helicopter crash); *Andrus*, 581 F.2d 177

_____

[9]Furthermore, Illinois FOIA exemptions are structured differently than those of the federal FOIA. Specifically, certain exemptions do not require a balancing test to determine whether disclosure would constitute a " 'clearly unwarranted invasion of personal privacy' " like in *Sherman*. See *Lieber*, 176 Ill. 2d at 408 (quoting 5 ILCS 140/7(1)(b) (West 1994)); see also *id.* at 409-10 (noting that, where information falls under the express terms of a FOIA exemption, "it would, by definition, constitute '[i]nformation that, if disclosed, would constitute a clearly unwarranted invasion of personal privacy' [citation] and be automatically exempt from disclosure").

(involving a government attorney's voluntary disclosure of documents to opposing counsel in a separate litigation where that recipient's interests were adverse to that of North Dakota's in a different litigation). Furthermore, like *Cooper*, the *Sherman* decision originated out of the Fifth Circuit; the Fifth Circuit clearly found the two situations distinguishable.

¶ 52   Second, and by extension, that LexisNexis is selling the traffic accident reports for $13 and remitting $5 to the Department does not bear on the relevant waiver analysis. In *Sherman*, it was argued that the Army had "sold lists of officers, together with their SSNs and birth dates, through the Government Printing Office." *Sherman*, 244 F.3d at 363. Still, the *Sherman* court was not in any way persuaded by this fact and, by not further discussing it, indicated that it was not factored into the waiver analysis. Regardless of the financial arrangement between the Department and LexisNexis, [10] the Department could not waive the privacy interests of the individuals whose exempt information is contained in the traffic accident reports.

¶ 53   Finally, even accepting, for argument's sake, Mancini Law Group's representations that the agreement between the Department and LexisNexis does not proscribe what LexisNexis may do with the unredacted reports containing individuals' personal and private information, per *Sherman*, this is not a material issue for purposes of waiver. Even accepting that such a purported lack of restrictions meant that any member of the public may have been able to access an unredacted report by paying $13, we will not entertain this rigid argument to the detriment of private individuals. See *id.* at 363-64 (noting that "the fact that otherwise private information at one time or in some way may have been placed [in] the public domain does not mean that a person irretrievably loses his or her privacy interest in the information"); *Reporters Committee*, 489 U.S. at 763 (rejecting such "cramped notion of personal privacy").[11]

---

[10]We express no opinion on this matter.

[11]Mancini Law Group's discussion of the "no-strings-attached" disclosure in *Watkins* is uncompelling. See *Watkins*, 643 F.3d 1189. That case considered exemption 4, which exempts from disclosure " 'trade secrets and commercial or financial information obtained from a person and privileged or confidential.' " *Id.* at 1194 (quoting 5 U.S.C. § 552(b)(4) (2006)). The information at issue was commercial in nature. *Id.* at 1197.

¶ 54    We add that, as similarly observed by the *Sherman* court, the personal and private information contained in the traffic accident reports would not shed light on the Department's actions or behavior. See 5 ILCS 140/1 (West 2016) (stating that "all persons are entitled to full and complete information regarding the *affairs of government* and the official acts and policies *of those who represent them as public officials and public employees*" (emphases added)); *Sherman*, 244 F.3d at 366; see also *id.* at 365-66 (discussing the "dire consequences of identity theft and other forms of fraud" attendant to disclosure of an individual's private information); see generally *Maracich v. Spears*, 570 U.S. 48, 52 (2013) (holding that lawyers' use of drivers' personal information contained in the records of state motor vehicle departments for solicitation purposes was prohibited by the Driver's Privacy Protection Act of 1994 (18 U.S.C. §§ 2721-2725 (2006))).

¶ 55    For these reasons, we hold that, as a matter of law, the Department could not and did not waive the ability to redact the private and personal information contained in the traffic accident reports. We affirm the grant of summary judgment entered in the Department's favor.

¶ 56                                CONCLUSION

¶ 57    Because an Illinois public body does not have the ability to waive an individual's interest in his or her own personal or private information, we hold that the Department is not precluded from asserting that the information redacted from the traffic accident reports is exempt under sections 7(1)(b) and 7(1)(c) of FOIA despite having provided LexisNexis, a state-approved vendor, unredacted copies of the subject traffic accident reports to comply with its mandatory reporting obligations under the Vehicle Code.

¶ 58    Judgments affirmed.

¶ 59    JUSTICE CARTER, specially concurring:

¶ 60    The issue on appeal is whether the Department is precluded from arguing that the information sought was exempt due to its contractual arrangement with

LexisNexis. Under that contract, the Department voluntarily disclosed the unredacted information to LexisNexis, allegedly without any restrictions. While I concur in this court's judgment, I write separately for two reasons.

¶ 61 First, I respectfully disagree with the majority's decision to reject, without analysis, the Department's argument that the 2010 amendment to section 7(1) of the Freedom of Information Act (FOIA) (Pub. Act 96-542, § 10 (eff. Jan. 1, 2010) (amending 5 ILCS 140/7(1)) granted it discretion to determine whether exempt information should be redacted. *Supra* ¶ 36. As amended, section 7(1) states:

> "When a request is made to inspect or copy a public record that contains information that is exempt from disclosure under this Section, but also contains information that is not exempt from disclosure, *the public body may elect to redact* the information that is exempt. The public body shall make the remaining information available for inspection and copying." (Emphasis added.) 5 ILCS 140/7(1) (West 2016).

Applying review in a statutory construction argument, our primary objective is to give effect to the plain and unambiguous language of the statute as the best indicator of legislative intent. When the language under consideration is clear, our task is to effectuate it without resorting to any extrinsic aids of statutory construction. *In re Marriage of Dahm-Schell*, 2021 IL 126802, ¶ 35.

¶ 62 In lieu of conducting that type of textual analysis, however, the majority merely concludes that "[t]he proposition simply is not borne out by the amendment." *Supra* ¶ 36. I respectfully suggest that the plain language of the amended statute allows a public body to elect to redact information in its purview. This court is obliged to imbue each word of the amended statute with reasonable meaning whenever possible and avoid rendering any part of the statute superfluous. *Dahm-Schell*, 2021 IL 126802, ¶ 35. I believe that we can harmonize the plain language of the amendment with the underlying goals of FOIA.

¶ 63 Section 7 makes information exempt from a FOIA request when disclosing it "would constitute a *clearly unwarranted invasion of personal privacy*," meaning that it would reveal "information that is *highly personal or objectionable to a reasonable person*" and "the subject's *right to privacy outweighs any legitimate public interest* in obtaining that information." (Emphases added.) 5 ILCS

- 23 -

140/7(1)(C) (West 2016). The subjective nature of that inquiry and the balancing tests that must be applied recognize the lack of clarity that may surround whether a specific piece of information is exempt from disclosure.

¶ 64　　When addressing requests for records containing both exempt and nonexempt data, the 2010 amendments permit a public body to determine when specific data must be redacted as exempt. That conclusion gives meaning to all parts of the statute by upholding both the public policy underlying FOIA, giving anyone "access by all persons to public records [to] promote[ ] the transparency and accountability of public bodies at all levels of government" (*id.* § 1), and the plain and unambiguous language of section 7(1)'s 2010 amendment, allowing "[t]he public body [to] elect to redact the information that is exempt" (*id.* § 7(1)). Applying that construction, a public body is able to maximize the transparency of governmental records while providing optimal protection of private information. Because the opinion fails to undertake any statutory analysis, however, I cannot join its unexplained rejection of the Department's textual argument. I believe this court has an obligation to explain its rationale more explicitly.

¶ 65　　Second, I do not join in the portion of the opinion relying on a federal Fifth Circuit Court of Appeals case not cited by either party and, consequently, reviewing a question that is not raised in this appeal. *Supra* ¶¶ 39-46 (citing *Sherman v. United States Department of the Army*, 244 F.3d 357 (5th Cir. 2001)). While I agree with the majority's discussion of *Sherman*, I cannot overlook the fact that it is focused on an issue not raised here: who may waive the relevant privacy interests. *Supra* ¶ 40 (citing *Sherman*, 244 F.3d at 359). After its thorough discussion of that court's analysis, the majority adopts its reasoning and reaches the same conclusion here, explaining that " 'only the individual whose informational privacy interests are protected by [the] exemption *** can effect a waiver of those privacy interests when they are threatened by a[ ] FOIA request.' " *Supra* ¶ 45 (quoting *Sherman*, 244 F.3d at 364). While I do not disagree with that analysis, it fails to address the statutory construction arguments made by the parties and, instead, resolves a matter that is not at issue here.

¶ 66　　This court has long adhered to the traditional principles of party presentation in its analyses. " '[A]s a general rule, [o]ur adversary system is designed around the premise that the parties know what is best for them and are responsible for

advancing the facts and arguments entitling them to relief.' " (Internal quotation marks omitted.) *Western Illinois University v. Illinois Educational Labor Relations Board*, 2021 IL 126082, ¶ 64 (quoting *People v. Givens*, 237 Ill. 2d 311, 324 (2010), quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)). " 'Were we to address these unbriefed issues, we would be forced to speculate as to the arguments that the parties might have presented had these issues been properly raised before this court. To engage in such speculation would only cause further injustice; thus we refrain from addressing these issues *sua sponte*.' " *Givens*, 237 Ill. 2d at 324 (quoting *People v. Rodriguez*, 336 Ill. App. 3d 1, 14 (2002)).

¶ 67     The parties here neither cited *Sherman* nor advanced the proposition that resolution of this appeal turns on who possesses the relevant privacy interests. See *supra* ¶ 40 (noting *Sherman* was not cited by either party). "That absence of any written argument strongly suggests that the parties believe their consideration is unnecessary for a proper resolution of this appeal, and I agree." *People v. Murray*, 2019 IL 123289, ¶ 60 (Kilbride, J., specially concurring, joined by Karmeier, C.J.).

¶ 68     I do concur, however, with the majority opinion on a number of other points. I agree that the financial arrangement between the Department and LexisNexis did not permit it to waive the interests of those whose exempt information was in the traffic reports and that the Department could not waive its statutory duty to redact private information in those reports. *Supra* ¶¶ 52-53. I also agree that the existence of other ways for the Department to fulfill its mandatory state reporting duty and the Department's receipt of a portion of the money LexisNexis receives from its sales of traffic accident reports are irrelevant here. Moreover, the Department's decision to hire LexisNexis to meet its reporting obligation does not support the inference that the Department gave it preferential treatment, running afoul of *Lieber*. *Supra* ¶ 51. I also agree with the majority that, even if the contract between the Department and LexisNexis failed to limit what the latter could do with the unredacted records, the matter is not a material consideration in our waiver analysis. This case invokes the provisions of FOIA, and the release of that information in no way provides the types of insights into governmental affairs and official conduct that FOIA is intended to make accessible to the public. *Supra* ¶¶ 16, 53. Therefore, respectfully, I specially concur in the court's opinion in this case.