2024 IL App (1st) 230565

FIFTH DIVISION
February 9, 2024

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-23-0565

MICHAEL WESSEL,                                          )
                                                         )     Appeal from the
      Plaintiff-Appellant,                               )     Circuit Court of
                                                         )     Cook County.
v.                                                       )
                                                         )     No. 22 CH 00862
THE WILMETTE FIREFIGHTERS' PENSION FUND,                 )
                                                         )     Honorable
      Defendant-Appellee.                                )     Caroline K. Moreland,
                                                         )     Judge Presiding.
                                                         )

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Presiding Justice Mitchell and Justice Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Michael Wessel applied for a non-duty disability with the Wilmette Firefighters'
Pension Fund (Wilmette Fund), but the Wilmette Firefighters' Pension Fund Board (Wilmette
Board) denied his claim. The question before us on appeal is whether, under the relevant portions
of the Illinois Pension Code (Pension Code or Code)—sections 4-111 and 4-109.3 (40 ILCS
5/4-111, 4-109.3 (West 2020)), Mr. Wessel is entitled to a non-duty disability pension from the
Wilmette Fund. For the following reasons, we agree with the Wilmette Board that he is not and
affirm the Board's decision.

¶ 2                                    I. BACKGROUND

¶ 3    The facts before us are not disputed. We take the facts surrounding the Wilmette Board's proceedings from the administrative record and the Board's findings, unless otherwise noted.

¶ 4    Mr. Wessel was a firefighter with the Wilmette Fire Department for just over nine years, from September 27, 2010, until he voluntarily resigned from the department on January 31, 2020. He began working for the Lake Villa Fire Protection District on February 1, 2020.

¶ 5    On February 16, 2021, Mr. Wessel applied for a non-duty disability pension with the Lake Villa Fire Protection District Fire Fighters' Pension Board (Lake Villa Board), pursuant to section 4-111 of the Code (*id.* § 4-111). According to Mr. Wessel's complaint in the circuit court, the Lake Villa Fire Protection District intervened in the pension application proceedings and argued it was not obligated to pay him a non-duty disability. Mr. Wessel further alleged in his complaint that at the time it was filed, the Lake Villa Board had not come to a decision.

¶ 6    On May 15, 2021, Mr. Wessel filed a separate application for a non-duty disability pension with the Wilmette Fund under section 4-111 of the Code. The Wilmette Board held a preliminary hearing on December 14, 2021. Mr. Wessel's counsel was given notice of the hearing, but neither Mr. Wessel nor his attorney attended the hearing. The parties dispute the reasons that occurred but, in fact, it makes no difference in our analysis of this case.

¶ 7    After the hearing, in a written decision entered on December 31, 2021, the Wilmette Board unanimously found that Mr. Wessel was not eligible for non-duty disability pension benefits under sections 4-111 and 4-109.3(n) of the Code (*id.* § 4-109.3(n)). The Wilmette Board noted that at the time Mr. Wessel applied for the disability pension, he was no longer an employee of the Wilmette Fire Department and that he had left voluntarily to take a job with another fire department. The Board explained:

"The statutory provisions provide for a non-line-of-duty disability pension that is partially paid by a pension fund of a previous employer only where: (1) the employee's previous employment was terminated by an intergovernmental agreement; and (2) where the previous employer has ceased to exist and operate as a service. That is quite clearly not the case here."

¶ 8 Mr. Wessel filed his complaint in the circuit court on February 1, 2022, seeking a declaratory judgment and administrative review of the Wilmette Board's decision denying him a non-duty disability pension. On June 24, 2022, the circuit court dismissed the declaratory judgment count and, on March 3, 2023, the court granted summary judgment to the Wilmette Board on the administrative review claim, adopting both the ruling and reasoning of the Wilmette Board.

¶ 9 This appeal followed.

¶ 10                               II. JURISDICTION

¶ 11 The circuit court affirmed the decision of the Wilmette Board on March 3, 2023, and Mr. Wessel timely filed a notice of appeal from that order on March 28, 2023. This court has jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 12                               III. ANALYSIS

¶ 13 The question before us is whether Mr. Wessel is entitled to a non-duty disability pension under the Pension Code. In interpreting the Pension Code, our duty "is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning." (Internal quotation marks omitted.) *Chapman v. Chicago Department of Finance*, 2023 IL 128300, ¶ 28. In addition, "all provisions of an enactment should

be viewed as a whole and words and phrases should be read in light of other relevant provisions of the statute." *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 19. We recognize that "statutory provisions should be read so that no term is rendered superfluous or meaningless." *Chapman*, 2023 IL 128300, ¶ 29. We review questions of statutory interpretation *de novo*. *Id.* ¶ 28.

¶ 14    At issue in this case are two specific provisions of the Pension Code: sections 4-111 (40 ILCS 5/4-111 (West 2020)) and 4-109.3(n) (*id.* § 4-109.3(n)). The first provides for a non-duty disability pension based on seven years of creditable service, and the second provides the requirements for calculating that creditable service.

¶ 15    Section 4-111, titled "Disability pension—Not in duty," provides in relevant part as follows:

> "A firefighter having at least 7 years of creditable service who becomes disabled as a result of any cause other than an act of duty, and who is found, pursuant to Section 4-112, to be physically or mentally permanently disabled so as to render necessary his or her being placed on disability pension, shall be granted a disability pension of 50% of the monthly salary attached to the rank held by the firefighter in the fire service at the date he or she is removed from the municipality's fire department payroll." *Id.* § 4-111.

¶ 16    Section 4-109.3(n), titled "Employee creditable service," as originally enacted by Public Act 93-689 (eff. July 1, 2004), provided:

> "If a firefighter who elects to make contributions *** for the pension benefits provided under this Section becomes entitled to a disability pension under Section 4-111, the last pension fund is responsible to pay that disability pension, provided that the firefighter has at least 7 years of creditable service with the last pension fund."

¶ 17    Public Act 95-1036 (eff. Feb. 17, 2009) then amended subsection (n) to add three additional

4

sentences:

> "In the event a firefighter began employment with a new employer as a result of an intergovernmental agreement that resulted in the elimination of the previous employer's fire department, the firefighter shall not be required to have 7 years of creditable service with the last pension fund to qualify for a disability pension under Section 4-111. Under this circumstance, a firefighter shall be required to have 7 years of total combined creditable service time to qualify for a disability pension under Section 4-111. The disability pension received pursuant to this Section shall be paid by the previous employer and new employer in proportion to the firefighter's years of service with each employer."

Section 4-109.3(a) defines the "last pension fund" as "the pension fund in which the firefighter was participating at the time of his or her last withdrawal from service." 40 ILCS 5/4-109.3(a) (West 2020).

¶ 18　Mr. Wessel argues that he earned his non-duty disability pension pursuant to the seven year requirement of section 4-111 while he was employed with the Wilmette Fire Department because he had nine years of creditable service with that department and section 4-109.3(n) simply dictates how the pension is to be split between the Wilmette Fund and the Lake Villa Fire Protection District. We reject this reading of the statute.

¶ 19　The plain language of section 4-109.3(n) makes clear that only the last pension fund is responsible for the non-duty disability pension and that an employee is entitled to that pension only "provided that the firefighter has at least 7 years of creditable service with the last pension fund." *Id.* § 4-109.3(n). Mr. Wessel does not dispute that Lake Villa was his "last pension fund," since that was the fund he was participating in at the time he withdrew from service. Because Mr. Wessel had less than seven years of creditable service with that fund, he is not entitled to a

non-duty disability pension.

¶ 20 Mr. Wessel argues that section 4-109.3(n) provides two scenarios for payment of the non-duty disability pension: (1) if a firefighter has seven years of creditable service with the last pension fund, then that fund is solely responsible for paying the non-duty disability pension or (2) if a firefighter has less than seven years of creditable service with the last pension fund but seven years from a previous employer, the prior employer and the new employer are both responsible for a *pro rata* share of the non-duty disability pension.

¶ 21 It is indeed clear that section 4-109.3(n) describes two scenarios. In the first, only service with the last pension fund is credited. In the second, service with multiple pension funds is combined or stacked. However, the plain language of subsection (n) makes clear that the second scenario applies only "[i]n the event a firefighter began employment with a new employer as a result of an intergovernmental agreement that resulted in the elimination of the previous employer's fire department." *Id.* In that limited circumstance, the statute provides that "the firefighter shall not be required to have 7 years of creditable service with the last pension fund to qualify for a disability pension under Section 4-111." Because Mr. Wessel did not leave the Wilmette Fire Department "due to an intergovernmental agreement that resulted in the elimination" of that department, he does not fall within this exception.

¶ 22 Mr. Wessel contends that this exception *is* applicable to him, and it simply explains how to apportion creditable service if the seven years was not entirely with the last pension fund. He relies on the last sentence, which reads, "[t]he disability pension received pursuant to this Section shall be paid by the previous employer and new employer in proportion to the firefighter's years of service with each employer." He contends that the use of the word "Section," rather than "circumstance," means that the sentence must apply to something more than the specific scenario

6

that directly precedes it. While we agree with Mr. Wessel that the legislature's use of the word "Section" is inartful, we do not think the statute can be read as he suggests.

¶ 23    Mr. Wessel's suggested interpretation would require us to ignore the two sentences directly preceding the last one, which make it clear that only in one limited circumstance is a firefighter entitled to combine creditable service. It is a basic tenet of statutory construction that "statutory provisions should be read so that no term is rendered superfluous or meaningless." *Chapman*, 2023 IL 128300, ¶ 29. There is no way that we can accept Mr. Wessel's interpretation without ignoring these two sentences.

¶ 24    Moreover, these two sentences were added to the statute as part of an amendment that also included the final sentence—the one that Mr. Wessel relies on—and for the first time allowed for any stacking or combining service from more than one department. See *supra* ¶¶ 16-17. Before Public Act 95-1036 (eff. Feb. 17, 2009) added the last three sentences to subsection (n), it had no provision for stacking the creditable service that a firefighter had with different funds. The fact that these three sentences were added at the same time supports our reading of them together as creating a limited stacking provision for calculating creditable service under subsection (n).

¶ 25    We also reject Mr. Wessel's interpretation because, if the legislature wanted to provide a pension to a firefighter who had seven years of creditable service across multiple pension funds, regardless of why that firefighter switched departments, it could have done so. In fact, the legislature did just that in another subsection of section 4-109.3.

¶ 26    Subsection (m), which explains how to calculate creditable service for an occupational disease disability pension based on "5 or more years of creditable service," provides the following:

"[E]ach pension fund to which the firefighter has made contributions *** must pay a portion of that occupational disease disability pension equal to the proportion that the

7

firefighter's service credit with that pension fund for which the contributions *** have been made bears to the firefighter's total service credit with all of the pension funds for which the contributions *** have been made. A firefighter who has made contributions *** for at least 5 years of creditable service shall be deemed to have met the 5-year creditable service requirement under Section 4-110.1, regardless of whether the firefighter has 5 years of creditable service with the last pension fund." 40 ILCS 5/4-109.3(m) (West 2020).

¶ 27    The language of subsection (m) diverges greatly from that of subsection (n). Subsection (m) allows a firefighter seeking an occupational disability disease pension to stack all their creditable service to reach the five years required. This general stacking is something the legislature chose not to do in subsection (n).

¶ 28    Mr. Wessel makes several other arguments about why the interpretation we are following cannot be correct. We are not persuaded by any of them.

¶ 29    According to Mr. Wessel, our interpretation adds a requirement that is not in section 4-111 because that section requires seven years of creditable service without specifying where that service comes from. However, as outlined above, sections 4-111 and 4-109.3(n) must be read together. *Rushton*, 2019 IL 124552, ¶ 19. We are not adding language to section 4-111; instead, we are reading the plain language of sections 4-111 and 4-109.3(n) together.

¶ 30    Mr. Wessel argues that he cannot be divested of the non-duty disability pension he earned from his more than seven years of service with the Wilmette Fire Department simply because he switched fire departments. But, again, when sections 4-111 and 4-109.3(n) are read together, having seven years of creditable service with a pension fund does not obligate that fund to pay the non-duty disability pension unless the firefighter is still employed by that fund at the time they seek that pension. This requirement has been in place from the time that Mr. Wessel became a

firefighter with the Wilmette Fire Department in 2010. There is no sense in which it can be said that he had any vested right to a non-duty disability pension without meeting this condition.

¶ 31    Mr. Wessel also argues that our reading of section 4-109.3(n) renders section 4-111 superfluous because "it includes the same requirement of vesting as Section 4-111 but then adds the additional requirement that service must be with the last pension fund." But section 4-111 provides other requirements for a firefighter to qualify for a non-duty disability pension—such as that firefighter becoming "disabled as a result of any cause other than an act of duty" and being found "to be physically or mentally permanently disabled." 40 ILCS 5/4-111 (West 2020). It also defines the amount of money that pension would entail. *Id.* Our reading of section 4-109.3(n) does not render section 4-111 superfluous; rather, section 4-111 sets out the requirements for a non-duty disability pension and subsection 4-109.3(n) explains how to calculate creditable service for that particular pension. Neither provision of the statute is superfluous; indeed, they go together to define the requirements of this pension and the method for calculating creditable service.

¶ 32                                    IV. CONCLUSION

¶ 33    For the foregoing reasons, we affirm both the decision of the Wilmette Board finding that the Wilmette Fund was not responsible for paying Mr. Wessel's non-duty disability pension, and the circuit court judgment affirming the Wilmette Board's finding.

¶ 34    Circuit court judgment affirmed.

¶ 35    Board decision affirmed.

---

*Wessel v. The Wilmette Firefighters' Pension Fund*, 2024 IL App (1st) 230565

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-00862, the Hon. Caroline K. Moreland, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Scott Barber of Barber Law Offices, LLC, of Schaumburg, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Lance C. Malina, Allen Wall, Jason Guisinger, and Colleen M. Shannon, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellee. |

---